DAVID VAUGHN, APPELLANT, v. KANSAS CITY GAS COMPANY, A CORPORATION, RESPONDENT.—159 S. W. (2d) 690.

Kansas City Court of Appeals. February 16, 1942.

Rehearing Denied March 5, 1942.

670

*Charles M. Miller* for respondent.

672

*Allan R. Browne* for appellant.

SHAIN, P. J.—This is a suit for damages brought by plaintiff, David Vaughn, for the death of his wife by breathing unburned natural gas alleged to have escaped from a meter and certain metal pipes due to the negligence of the defendant. A trial was had to a jury, resulting in a verdict for the plaintiff in the sum of $6000. Defendant's motion for new trial was sustained and the case reaches us on appeal from that order.

The defendant has filed a motion to affirm the judgment of the trial court based upon four specifications and its brief herein is principally directed in support of these specifications. In the filing and presentation of its motion the defendant presents its points from the standpoint of proponent and, in consideration of the motion, we naturally, in passing upon the motion, treat same in accordance.

Defendant under points and authorities urges affirmance of judgment by nine specified points. In our review we will not need to take up these points in the order presented in defendant's brief for the reason that one point alone, if sustained, will suffice.

We are first confronted with defendant's motion to affirm the judgment of the trial court in granting it a new trial: First, because the statement of plaintiff is not a clear and concise statement of the case without argument, as required by our Rule 16; Second, because no authorities were cited under plaintiff's points and authorities; Third, because the alleged record proper does not show or state what the record of the court discloses; Fourth, because the alleged bill of exceptions shows that it does not include all of the evidence received in evidence, to-wit, the original petition which was introduced and read in evidence.

We have carefully read plaintiff's statement, and believe it is sufficient to meet the requirements of Rule 16. The first page recites

the issues made by the pleadings, the result of the trial, the sustaining of the motion for new trial, and the perfection of the appeal therefrom. Then follows six pages condensing the evidence in the record, and citing the page of the record where such evidence can be found. From this statement we can get the issues involved and the material evidence introduced in support thereof. We hold that the statement is sufficient to comply with our Rule 16.

To support its first ground for affirmance of the judgment of the trial court, the defendant cites the case of Lane v. Lane, 17 S. W. (2d) 584, 586. That case is no authority for the question involved here, because in the Lane case the statement was a mere recitation of the proceedings in the trial court without any effort to include a statement of the facts or issues.

The second point urged in the motion by defendant is that no authorities are cited *under* "Points and Authorities." An examination of plaintiff's brief discloses that no authorities are cited directly unde his "Points and Authorities," but under the heading "Brief and Argument," the plaintiff has recopied his "Points" and there cites his authorities in support thereof, and in his argument discusses the various authorities cited. We hold this is sufficient compliance with the rules of this court. Usually attorneys cite authorities immediately under the various points and again refer to such citations in the argument, but our rules do not require the citation of the authorities immediately under the points. In the present case, the points being urged are again copied and citations given and discussed under each point separately. This seems to be a substantial compliance with our rules and we so hold.

The defendant next urges that its motion to affirm the judgment of the trial court should be sustained because the alleged record proper does not show or state what the record of the court discloses. Upon examination of the record proper, we find there is no merit in this contention.

In approaching this appeal on the merits, we are immediately confronted with this unusual situation: The trial of the case was completed on April 24, 1940 (which was during the March Term), resulting in a jury verdict and judgment for the plaintiff in the sum of $6000. Within four days thereafter, the defendant filed its motion for a new trial, which was taken up and considered by the trial court at its September Term, 1940, and on the 30th Day of October, 1940, the clerk entered this order of record:

"Now on this day, defendants motion for new trial of this cause heretofore filed herein, is by the court taken up, fully heard and sustained, to which action and ruling of the court plaintiff excepts."

On November 2, 1940, and during the September Term, plaintiff perfected his appeal from said order. It appears from the bill of exceptions as set out in plaintiff's printed abstract of the record that

on the 5th day of February, 1941, and during the January Term, 1941, of the circuit court, plaintiff filed his motion for *nunc pro tunc* order, the purpose of which was to correct the original order entered of record as above set out, sustaining defendant's motion for new trial, and to make it conform to the true facts as the same appeared in the minutes of the circuit clerk's record and on the trial judge's docket, so that when said order sustaining defendant's motion for new trial was corrected in accordance with the true facts, it would show that the motion for new trial was sustained "on the third ground." This motion was sustained by the trial court on the 6th day of February, 1941, the same being during the January term, 1941, of said court, and as a result of sustaining said motion, the court then made the following order:

"It is ordered and adjudged by the court that the order heretofore entered in this cause on the 30th day of October, 1940, in Record Book 622 at page 275 be and the same is hereby set aside and for naught held, and in lieu thereof, the following order entered, as follows, to-wit:

" 'Now, on this day, defendant's motion for new trial of this cause heretofore filed herein, is by the court taken up, fully considered and sustained on the third ground; to which ruling and action of the court the defendant then and there duly excepted and still excepts.' "

The defendant first urges that the case having been appealed, and the appeal and jurisdiction having been lodged in this court, the trial court was without any jurisdiction over the case except to settle the bill of exceptions; and especially is that true because the term of the court at which the order has been made had passed. Defendant cites no authorities to sustain that contention. In the case of Kansas City v. Jones Store Co., 28 S. W. (2d) 1008, 1013, our Supreme Court says:

"While the trial court loses jurisdiction of the *case* when an appeal is taken, it does not lose the jurisdiction of its records."

The court there permitted an amendment to the bill of exceptions to show the true situation.

Our courts have frequently held that an order correcting *nunc pro tunc* a judgment can be made at a subsequent term, but that it must be made upon evidence furnished by the papers and files in the cause, or something of record, or in the clerk's minute book, or on the judge's docket. That it can only be employed to correct a clerical error or misprision of the clerk. [Wiggins v. Perry, 119 S. W. (2d) 839; and Cross v. Greenaway, 152 S. W. (2d) 43, and case there cited.] In the case of DeKalb County v. Hixon et al., 44 Mo. 341, the Supreme Court decided the very point here at issue in the following language:

"After an appeal, and while the cause was pending in the District Court, the Circuit Court ordered its records amended so as to show that a final judgment followed the order of dismissal; the record entry of the judgment being made *nunc pro tunc*. The defendants (plaintiffs in error) objected to this as unwarranted and beyond the jurisdiction of the court.

"The objection is not well taken. The court had lost its jurisdiction of the case, but not of its records. It had authority, as well after as before the appeal, to amend its records according to the truth, so that they should accurately express the history of the proceedings which actually occurred prior to the appeal."

We hold that the trial court had jurisdiction to correct by *nunc pro tunc* its order sustaining the motion for new trial at a subsequent term and after an appeal had been perfected to this court.

We next take up for consideration defendant's point four as follows:

"Fourth—Because the alleged bill of exceptions shows at page 350 it does not include all the evidence received in evidence, to-wit, the original petition, which was read in evidence (clerk here copy) is not sufficient."

The right of appeal being statutory, the Legislature has enacted a general statutory rule for the lodgment of record in the court of review. To the end of uniformity and clarification of the statutory rule the Supreme and appellate courts of this State have promulgated rules of appellate practice in conformity with the reasons of the statutory rule and failure to comply permits penalty.

Since the organization of our courts of review many questions concerning the application of these rules have arisen and there are many judicial utterances on the point. Many of these judicial utterances have been wise and helpful, some utterances could have been unsaid and, if so, would have avoided confusion.

It follows that our courts of appeal, sometimes designated courts of last resort, when confronted with assignments concerning the filing of bills of exceptions are placed in a position of running into a *certiorari* ambuscade and must approach the issue with the same caution that a guardsman approaches a fallen bomb in order to ascertain as to whether or not there is a time fuse.

To the solution of the point stated above, we, after diligent research, presume to state in our own language what we construe the general rule to be, to-wit: In all cases tried in the lower court wherein the judgment is based upon the law and the evidence, it follows that in trial to jury, by the court sitting as a jury, or by the court in equity cases or by directed verdict, the losing party, either plaintiff or defendant, who assigns error of the specified ground of no evidence supporting the finding of fact and consequent judgment, then in order to have his point considered on review the appellant must

lodge in the appellate court all of the evidence. This is for the reason that final judgments are based on a consideration of all the evidence and omission in such cases eliminates matters necessary to an intelligent review. However, as there are issues that arise on appeals that do not require the consideration of all the evidence, the appellate courts of this State, to avoid the doing of the unnecessary, have provisions in rules of court that permit eliminations conforming to the reason of the reasons for the rule.

Rule 13 of the Supreme Court of Missouri requires that in all law cases, ''The abstract must set forth a copy of so much of the record as is *necessary* to be consulted in the disposition of the assigned errors.'' (Italics ours.)

In rules effecting equity cases there are similar provisions. Rule 15 of the Kansas City Court of Appeals has provisions of the same purport as the Supreme Court rule. The qualifying language being as follows: ''Setting forth so much thereof as is *necessary to a full understanding* of all the questions presented to this court for decision.'' (Italics ours.)

An examination of our appellate court reports reveals the fact that in many instances there has been a laxity in the enforcement of the rules respecting the lodgment of record in the appellate courts. In some of these cases sympathy rather than reason accounts for the laxity.

In a most recent opinion of the Supreme Court, Fears v. Newman, 156 S. W. (2d) 909, at the present writing only appearing in the Southwestern Reporter, Judge ELLISON writes a very comprehensive and clarifying opinion wherein there is constructive criticism of laxity in applying the rule.

In the case, *supra*, the trial court had directed a verdict against plaintiff and for defendant, and judgment was in accordance. The appealing plaintiff did not comply with the general rule in that he failed to include all of the evidence in the abstract. The defendant filed motion to dismiss appeal for failure to comply with the rules.

The plaintiff in support of his contention cited many appellate court cases wherein the penalty of the rule had not been inflicted and apparently urged that the reason of the rule did not apply to plaintiff under the situation.

The opinion in the case makes it plain that the rules of the court apply to plaintiff and defendant alike, and plaintiff's appeal was dismissed. In the course of the opinion, laxity in failure to impose penalty, when the reason of the rule had application, was criticised and the opinion in its last paragraph clearly sets forth and classifies the situation wherein the inclusion of all the evidence is required. The paragraph is as follows:

''However, where the appeal involves the probative value of the evidence as a whole, as in the Bueker and Colorado Milling cases,

*supra,* it is well established that all the evidence should be brought up, so that the appellate court 'may, for itself, determine its materiality and probative force.' [345 Mo. 833, 136 S. W. (2d) 282.] It is not for counsel, but for the court, to say what evidence is material. The instant case is of that class. On authority of the decisions just cited, and because appellant after two opportunities has made no effort to correct his abstract, we again hold it insufficient, and dismiss the appeal. It is so ordered.''

The case referred to and cited above involved assignment of error in refusing defendant's offered demurrer to the evidence.

Under the law, in matters concerning sufficiency of record, the duty is devolved upon the appellate court to determine what evidence is material to review and, in determining the matter, each case stands upon its own bottom.

In the case at bar all of the evidence on the part of plaintiff is in record and all of the evidence offered by the defendant, except the plaintiff's abandoned pleading, is also in the record. The defendant herein urges that the judgment of the trial court, in granting a new trial, on given reason of no evidence to support the verdict of the jury, should be affirmed by reason of the fact that the aforesaid abandoned petition is not contained in the record.

It becomes our duty to determine the question of materiality of the omitted evidence in determining the question as to whether or not the trial court committed error in granting a new trial on reasons assigned, *supra.* In the performance of our duty, we confine ourselves to the question of omission of the abondoned pleading and nothing else. In other words, we do not intend our reasoning to be a precedent further than as to the exact point involved.

It has been universally held by the courts of this State that in the solution of the question, as to whether a demurrer should be sustained for failure of evidence to support, rests on the fact as to whether or not there is shown any substantial evidence that supports the verdict.

The original petition, being an abandoned pleading, could not contain any admission of plaintiff of a conclusive nature, but at the most could amount to no more than to create a conflict in the evidence which the jury could have decided, and did decide, if there was such a conflict, in favor of plaintiff. Consequently whatever the abandoned petition may have contained, it would not have made any difference on the question as to whether there is any evidence whatever in the record to justify a recovery on the part of plaintiff. [Craven v. Milling Co., 209 Mo. App. 557; Cameron v. Hart, 57 Mo. App. 142, 146; Scott v. Tanner, 208 S. W. 264; Bueker v. Aufderheide et al., 345 Mo. 833.]

We hold that the omitted petition is not necessary to a full understanding of the question presented for decision.

Our conclusions above bring us to the vital issue in this review, to-wit: Was or was not the trial court in error in granting a new trial on the stated ground that the demurrer requested by defendant should have been sustained.

In addition to the above the defendant urges alleged grounds claimed as grounds for granting of a new trial that must be ruled upon, to-wit:

"That the verdict was against the weight of the evidence, if there was any evidence at all of the alleged negligence submitted, which we deny, was a proper ground for granting a new trial.

"The trial court erred in refusing defendant's Instruction F, refusing to withdraw from the jury the alleged issue of alleged negligence against the defendant of alleged failure to warn plaintiff that the gas supplied contained carbon monoxide and it was dangerous to breathe the same.

"The petition, because of inconsistency in charges of negligence, failed to state a cause of action, as asserted in the motion for new trial, sufficient to warrant the granting of a new trial.

"Error in plaintiff's given Instruction I, assigned in the motion for new trial, was sufficient for warranting the granting of a new trial because the said instruction erroneously submitted alleged issues of negligence which were not supported by the evidence, and were misleading and confusing.

"Appellant's Points II and III, relating to the error of the court in refusing to admit certain alleged evidence, are not reviewable, first —because no authorities are cited thereon, and second—because plaintiff, having had a verdict, even if error was committed, which we deny, the same did not warrant the re-instatement of plaintiff's verdict."

In our further discussion we will continue to refer to appellant as plaintiff and to respondent as defendant.

Pertinent to question of demurrer, the evidence must be construed, of course, in its most favorable light to plaintiff and for the purposes of review the statement of any substantial evidence, if any, which presents an issue of fact of liability under the pleadings, if any, will suffice.

In this action the husband seeks to recover damages for the death of his wife alleged as caused by negligence of defendant in the installation of its gas service to a flueless gas heater to be used for defendant's family use. Negligence is alleged as follows:

". . . *Defendant negligently supervised installation of said heater without a flue and negligently failed to warn plaintiff or his wife of the danger thereof and assured them of its safety*; that said piping and meter and radiant fire heater had very recently been installed before the death of deceased under the supervision and direction and control of defendant, after which installation de-

fendant *negligently* assured deceased and plaintiff that said installation was properly made, and was safe to use, and *that said gas containing said deadly carbon monoxide would not escape into the air* so as to come in contact with deceased and be breathed in by deceased; that defendant negligently supervised and controlled said installation and negligently furnished a defective and leaking gas meter to deceased and plaintiff, *so that that said piping and heater* installed under the control and direction of defendant did allow *said gas containing said deadly carbon monoxide and natural gas hydrocarbons* to escape into the air and to come in contact with deceased so that she breathed the same in, and said leaking meter allowed *said gas* to escape into the air and come in contact with deceased and to be breathed in by her, and defendant negligently assured deceased and plaintiff of the safety of said radiant fire heater and of said meter, so that deceased had stayed in the proximity of said leaking meter and leaking pipes and heater producing carbon monoxide; that said gas leaked out of said piping *and heater and meter* as above mentioned and was breathed in by deceased and caused her death;'' (Italics ours.)

Defendant joined issue by general denial.

Plaintiff testified that he was moving into a dwelling which had gas pipe connection with defendant's service through defendant's service pipes which had been turned off. Plaintiff further testified that he called at the office of defendant and gave an order for the gas to be connected up with the cooking stove and also with a flueless gas heater. It appears that defendant accepted the order and sent out its employee to make the installation. It appears that defendant owned the pipes that brought the gas into its meter situated in a closet in the dwelling and that after it left the meter the defendant did not own the distributing equipment situate in the dwelling.

We are specific as to the statement, *supra,* for the reason that we conclude from a study of the record that the negligence of defendant, if any, was in installing connection of its service pipes to its meter.

After careful examination of the record, we conclude that defendant's liability, if any, rests alone upon the issue of fact as to whether or not it was negligent in making aforesaid connection.

Our conclusion, based upon the pleading and evidence is that if there is any substantial evidence from which it is reasonable to infer that defendant so negligently made aforesaid connection as to permit death dealing gas to escape, such fact, if shown by the evidence, is sufficient to place liability upon defendant. So concluding we shall confine ourselves to a consideration of that issue of fact.

The evidence discloses that on the morning of February 28th, defendant's employee came to make the installation and upon making a test discovered a leak in the connecting pipes within the dwelling, and told plaintiff that he could not make installation until same was

remedied. The evidence discloses that plaintiff put in a new section of pipe which remedied the defect. Thereafter, defendant's employee came and made connection of its service pipe to its meter and made tests of the joints of connecting pipe from meter to gas heater.

Concerning what was done thereafter, the following questions and answers disclose as follows:

". . . Did he turn that on and light it? A. Yes, he turned that on and lit it and it flashed up naturally like it would where a stove is empty and the gas comes on all at once, you know, so I got down there, him standing and looking at me, and I set this little thing here that you turn in order to regulate the fire. He throwed up his hand and says, 'All right, you can turn it on, you are safe,' and on he went, out the door.

"Q. Took his tools with him? A. He did.

"Q. Now, before he left, you said you were adjusting that heater right in front of him. Now state after it settled down from that first burning off of the dust or whatever it was, what kind of a flame was there in that heater? A. Well, I would say a nice blue, dark blue or purple blaze. Now, you could pronounce it either way, a real dark blue or a kind of a purple blaze from that and it was about that high (indicating)."

After connection and tests were made, the following questions and answers in plaintiff's evidence is pertinent:

"Now, then you say he went out the door saying, 'All right, you are safe'? A. Yes. I thanked him for coming back by and he threw up his hand as saying it was all right, you know, for my thanks, and says, 'You are all right, turn her on.' I thanked him for his work and he waved at me and on out he went and got in his truck and left."

Plaintiff testified that thereafter he and his wife moved into the residence and slept in the new home one night with a window up in the bedroom and did not detect any gas while in the bedroom. Plaintiff further testified that he left next morning about five or five-thirty on the date of March 1st, and that when he returned on the evening of March 1st, he detected a weak odor of gas which was noticed more when the heater was turned off. The plaintiff testified that he and his wife slept in the house that night with an open window and that he left home the next morning before his wife got up and that his wife was restless in the night but that when he left she appeared to be in good health.

Plaintiff's testimony is further to the effect that when he returned home from work at about five o'clock that evening he found a note on the door giving notice that the telephone man had been there and found no one at home. Plaintiff further testified that he rushed into the house and found his wife lying on the floor practically dead and that the house was full of fumes of natural gas and that the gas

heater was at that time burning with about a two-inch flame, a nice blue or purple flame.

It is shown that thereafter the plaintiff went for help; that his wife was moved out of the house and that attempts to revive her were in vain and that she died. It further appears that the house was locked up for the night and that plaintiff returned the next morning, March 2nd, and that strong odor of gas was still in the house. Plaintiff testified that he then began to look to see where it was coming from. Plaintiff states, ''I followed up to see where the gas was coming from,'' and states ''When I got to the meter, this union where the gas went into the meter was loose. I tightened it up some and had to go to the undertakers or I would have called them, the company.''

Plaintiff's testimony is to the effect that when he returned home, the morning after his wife's death, he traced the gas odor into the closet where the meter was located and found the connection loose so that he could turn it slightly with his hand. His testimony is further to the effect that he left to go to the undertakers and locked up the house before going, and that on his return the next morning the gas odor was still strong and that he again went to the closet and that the odor was strong there. The plaintiff further testified as to the smell, ''I would say more over the meter yet it would be hard to affirm exactly where it would be as being close, hanging over the meter.''

The plaintiff further testified that he secured a wrench and turned the loose connection about once around.

The following question and answer in plaintiff's testimony, the above being considered, we conclude is very pertinent to the issue, to-wit:

''Q. Mr. Vaughn, when you turned—when you got this wrench and turned off that place where the connection was loose, I will ask you if after that that strong smell of gas stopped? A. Well, it ceased.''

The evidence discloses that plaintiff's dog was seriously affected by the gas and that two canary birds died. The testimony discloses that plaintiff continued to live in the dwelling approximately seven months after the death of his wife. However, plaintiff testified that he did not use gas after the trouble and that he thereafter used coal oil to cook with. There is evidence shown, *supra,* which negatives implication of gas escaping from either burning gas jets or connecting service pipes in the house.

The plaintiff was subjected to a long, skillful and gruelling cross-examination, evidently a fact-finding fishing expedition, wherein an artist with his rod cast his bait with such wonderful accuracy that it incited the prey to rise to the lure. However, it is not every strike that is a catch and we conclude the issue, as to demurrer, rests squarely upon the facts of evidence as set forth, *supra.*

We conclude that the evidence on behalf of plaintiff presents competent and substantial evidence from which finders of fact can reasonably infer that the deadly gas escaped from the meter connection installed by defendant. We conclude that it was error for the trial court to grant a new trial upon the ground that a demurrer should have been given.

The court having sustained the motion for new trial on a specific ground, all other grounds are overruled and we cannot pass upon the weight of the evidence. There is no merit in defendant's contention.

As to defendant's point as to withdrawal of Instruction F, no reasons are assigned and no authority is cited. We find against defendant on same.

Defendant's claim that plaintiff's charges of negligence are not sufficient to state cause of action, we conclude, is not well taken.

Defendant's point alleging error in instructions given on behalf of plaintiff is somewhat abstractly stated and no authority is cited. We have read the instruction and rule against defendant.

We have held, *supra,* that the fact that the gas fumes were traced to the meter in the closet and the testimony of the plaintiff to the effect that the smell ceased when he tightened the connection presents substantial evidence from which it can be reasonably concluded that the gas, which produced the smell and effect, was escaping from the said defective connection.

There is nothing in defendant's concluding point that is material to the issue in this review.

Judgment reversed and cause remanded with instructions to the trial court to reinstate the verdict and enter judgment thereon. All concur.

### ON MOTION FOR REHEARING.

SHAIN, P. J.—In motion for rehearing defendant urges that by reason of fact that plaintiff did not renew his exceptions, as to granting of new trial after the *nunc pro tunc* order, made after expiration of term, no exceptions were preserved by plaintiff.

The above contention appears to be based upon defendant's theory that by correcting the record to speak the truth, the trial court rendered a new judgment to which plaintiff should have excepted. If such be the case then the defendant, by its objection and excepting to the same, is in the peculiar position of now urging affirmance of a judgment which it objected and excepted to.

In our opinion we hold that the trial court had the right to, at a subsequent term, make an order based upon its notes, so as to make the record speak the truth. The trial court, however, had no jurisdiction to render a new judgment.

We conclude that plaintiff's exception duly taken at the time the judgment was rendered is sufficient.

Defendant again raises point on omission of plaintiff's abandoned pleading. We fully express our conclusion on that point in our original opinion.

Defendant in its motion makes further claim as follows:

"Plaintiff cannot dispute and is bound by the allegations of his petition which alleged that plaintiff's wife 'breathed in' carbon monoxide gas from the radiant fire heater and from the meter."

The above presents novelty in view of the fact that defendant asked and received withdrawal instruction as follows:

"The court instructs the jury that the alleged issue that defendant negligently supervised the installation of the radiant fire heater without a flue and negligently failed to warn plaintiff or Mrs. Vaughn of the danger thereof, and assured them of its safety, is withdrawn from your consideration and you will not consider the same as an element of negligence against defendant in arriving at your verdict in this case."

Further, defendant asked and was given Instruction I as follows:

"The court instructs the jury that even should they believe and find from the evidence that natural gas escaped in the house in question of plaintiff, yet if they further believe and find that said gas did not contain carbon monoxide, then your verdict must be in favor of the defendant."

In the light of the pleadings and the evidence in this case, the instruction, *supra*, certainly gives defendant all that it is entitled to receive.

We quote allegations of plaintiff's petition, not copied in our original opinion as follows:

"Defendant supplied natural gas containing carbon monoxide and natural gas hydrocarbons, deadly to persons breathing in said carbon monoxide and *said other deadly* gas, said gas being supplied to said house for use by the plaintiff and deceased through a system of pipes through a meter owned and supplied by defendant and through pipes into a radiant fire gas heater." (Italics ours.)

The issue was presented in plaintiff's instruction upon the sole theory that death was caused by escape of unburned natural gas escaping through alleged defective meter connection.

There is evidence to the effect that such gas breathed in quantity kills.

Dr. Welch, witness for plaintiff, testified that according to his belief plaintiff's wife died from axphyxiation. The examination of experts is so interrupted by objections and remarks of counsel that one has to carefully read the record to get the purport of what was said.

After Dr. Welch had testified as to death by axyphyxiation and testified that natural gas breathed in sufficient quantities would kill, he was asked: "What elements are in it that are lethal? (Webster

defines "lethal" as deadly, mortal, fatal.)   The doctor's answer was as follows: "Well, usually carbon monoxide and also methane are usually the ones that are lethal."

Based upon the evidence from which it can be reasonaby inferred that unburned natural gas, having a strong odor, escaped from the defective meter connection and further evidence that plaintiff's wife died from axphyxiation from breathing said unburned natural gas, the lethal elements of which are testified to as "usually carbon monoxide and also methane," we conclude there was substantial evidence to support the verdict.

Defendant again raises the question of weight of evidence.   We repeat, that weighing of the evidence does not come within our province.   However, as the trial court ruled on the expressed ground of *no substantial evidence*, we find nothing in the record that justifies us to conclude that the trial court passed upon the weight of *no substantial evidence*.

Having ruled that the trial court erred in granting a new trial upon the specific grounds stated by the court, we rule against defendant on its contention that the trial court based its ruling upon weight of testimony.

Defendant's motion for rehearing denied.   All concur.