Billy Joe **THOMPSON**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–15478.

Court of Criminal Appeals of Oklahoma.

Sept. 8, 1971.

Simon B. Spradlin, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Max A. Martin, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

The plaintiff in error, Billy Joe Thompson, hereinafter referred to as defendant, was charged by information in the District Court of Oklahoma County, Oklahoma, Case No. CRF–69–662, with the crime of Carrying a Concealed Weapon, After Former Conviction of a Felony. The case came on for trial before a jury, and the jury returned a verdict finding the defendant guilty as charged and assessing his punishment at Two Years imprisonment in the state penitentiary. Judgment and sentence was imposed on June 20, 1969, and this appeal perfected therefrom.

Specifically, defendant was charged with wilfully transporting in a vehicle a certain weapon, to-wit: a Daisy $CO_2$ Air Pistol, on March 26, 1969, said event occurring after defendant had entered a plea of guilty the previous month (on February 11, 1969) for a suspended sentence on a charge of Burglary in the Second Degree.

Officer R. J. Melton testified that on March 26, 1969, at approximately 10:30 P.M., he observed and stopped a 1956 Chevrolet because the "tag light was out." The officer did not turn on his siren, and the Chevrolet pulled over as soon as the police car's red light was turned on. The operator of the Chevrolet, defendant, immediately got out, approached the officer, and was placed in the police car under arrest for improper motor vehicle equipment. There was no pat-down or search of defendant's person. The officer then ordered out of the Chevrolet the only other occupant, who was arrested and placed in the police car. The officer then searched the Chevrolet and "upon opening the door to the glove box, the pellet pistol fell out." Officer Melton testified he did not ascertain ownership of the pellet air pistol; that he had seen the Chevrolet within the preceding two weeks operated by defendant; that he knew Donnie Gilbert owned the Chevrolet and had stopped Gilbert previously while operating the Chevrolet. The air gun was admitted in evidence over defendant's objection and after defendant's motion to suppress was overruled.

For the defense, Donnie Gilbert testified that because his operator's license had been suspended, defendant and Gilbert had an arrangement by which defendant operated Gilbert's Chevrolet. Gilbert testified he had purchased the air gun in question, had used it, and had personally placed it in the glove box on the day of the arrest. Gilbert said defendant did not know about the air gun, had never used it, and had not seen it in the Chevrolet. Gilbert then stated that Officer Melton had previously stopped him on several occasions and had given him about 20 traffic tickets. Gilbert testified that he had used the air gun earlier that day while with Donald Maggard without defendant's knowledge or presence. Maggard testified that he and Gilbert had used the air gun on that day and had placed it in the glove compartment without defendant's knowledge. Robert Overstreet testified that he was present when Gilbert purchased the air gun, and that defendant was not there. Defendant's mother, with whom the defendant lived, testified that she had never seen defendant with this air gun or any other gun. Defendant denied knowing the air gun was in the vehicle.

 Defendant was charged with the crime of "carrying a concealed weapon, after former conviction of a felony" by a single page information read to the jury in the opening statement alleging that defendant wilfully and feloniously transported a Daisy $CO_2$ Air Pistol in a vehicle, an offense punishable by imprisonment in the state penitentiary, after having been convicted of burglary in the second degree, that also being a crime punishable by imprisonment in the state penitentiary. Since the obvious intent was to charge defendant with a violation, 21 O.S.1961, § 1283, which prohibits a felon from carrying a firearm, the single page information was error. The rule stated in Baeza v. State, Okl.Cr., 478 P.2d 903 (1971):

"It is reversible error to read language of an information alleging defendant's

prior convictions in the opening statement of the district attorney or refer to his prior felony convictions in said opening statement.

The charge of Carrying a Firearm After Former Conviction of a Felony, 21 O.S. 1961, § 1283, must be tried in a two-stage proceeding as set forth in Harris v. State, Okl.Cr., 369 P.2d 187. In the first stage, the jury shall determine if defendant is guilty of carrying a firearm. If the jury finds him guilty of carrying such weapon, then and in that event a second stage of the trial shall be held and evidence of a former conviction introduced and an instruction given on the penalty for carrying a firearm after former conviction of a felony."

Further, as we noted in Washington v. State, Okl.Cr., 481 P.2d 180 (1970), it is inaccurate and misleading to state a violation of 21 O.S.1961, § 1283, as "carrying a concealed weapon after former conviction of a felony." It is a violation of § 1283 for a felon to carry a firearm, not merely a weapon, and concealment is not a factor. The true offense of "carrying a concealed weapon", 21 O.S.1961, § 1271, is a misdemeanor and cannot be coupled with the subsequent offender statute, 21 O.S.Supp. 1970, § 51, to enhance punishment.[1]

Next, we must consider the nature of the object found in the vehicle in view of the prohibition. Title 21, O.S. 1961, § 1283 provides:

"It shall be unlawful for any person having previously been convicted of any felony in any court of a state or the United States to carry on his person, or in any vehicle which he is operating, or in which he is riding as a passenger, any pistol, imitation or homemade pistol, machine gun, sawed-off shotgun or rifle, or any other dangerous or deadly firearm which could be as easily concealed on

the person, in personal effects or in an automobile, as a sawed-off shotgun."

This Section prohibits the carrying of "any pistol, imitation or homemade pistol * * * or any other dangerous or deadly firearm." It is a restriction on carrying firearms and not so broad as to encompass all weapons. As stated in Washington v. State, supra: "§ 1283 * * * applies only to firearms and not weapons in general." The language "or any other dangerous or deadly firearm" limits and restricts the word "pistol" to only firearms, and "imitation" or "homemade" refers to the type or kind of firearm.

The courts have held that "pistol" means a short firearm. Bright v. State, 125 Neb. 817, 252 N.W. 386 (1934); Campbell v. Commonwealth, 295 Ky. 511, 174 S.W.2d 778 (1943). A "firearm" has been defined by the courts as a weapon from which a shot or projectile is discharged by force of a chemical explosive such as gunpowder. People v. Charles, 9 Misc.2d 181, 169 N.Y.S. 2d 757, 758 (1958); Tendler v. District of Columbia, 50 A.2d 263 (D.C.Mun.App. 1946). State v. Barrington, 198 Mo. 23, 95 S.W. 235 (1906).

Furthermore, the Oklahoma Firearms Act of 1971 defined "pistol" as a "firearm capable of discharging a projectile * * * able to cause lethal injury * * * using either gunpowder, gas or any means of rocket propulsion." 21 O.S.1971, § 1289.3. "Lethal" is defined as deadly, mortal, fatal. Black's Law Dictionary. Vaughn v. Kansas City Gas Company, 236 Mo.App. 669, 159 S.W.2d 690, 698. A "BB" or small lead pellet generally designed for use in an air compression pistol is not a firearm type bullet and may not "reasonably be expected" to cause death. Also, an air compression gun does not operate by force of a chemical explosion, using gunpowder, gas or any means of rocket propulsion.[2] Thus,

---

1. Section 1271 of Title 21 was repealed in 1971, and replaced by the Firearms Act of 1971, 21 O.S.1971, §§ 1289.1 to 1289.17, in which carrying a concealed weapon remains a misdemeanor, § 1289.8.

2. A rocket is defined as a projectile filled with combustible substance which when ignited produces gases and is driven forward by the principle of reaction. Webster's Dictionary.

an air compression gun does not imitate the explosive nature of a firearm.

In People v. Charles, supra, concerning a charge for violation of a New York statute against the use or carrying of any dangerous or deadly instrument including an "imitation pistol", the court held that "an air pistol is not a 'firearm' within the meaning of Section 1897." Likewise, in Tendler v. District of Columbia, supra, the Court held: "It seems to us obvious that an air pistol is not a 'firearm'."

In Lunde Arms Corp. v. Stanford, 107 F.Supp. 450 (S.D.Cal.1952), involving a charged violation of 18 U.S.C.A. § 1715 prohibiting the mailing of "pistols, revolvers, and other firearms," the Court found that an "ordinary cap or toy pistol, with a simulated barrel and cylinders" which projects a lead bird-shot as a "BB" gun was "neither a 'firearm' or 'weapon'." The court observed that: "To denominate such an instrument a weapon is an absurd departure from reality." 107 F.Supp., at 452. Other courts have held that an air gun or pistol is not a firearm. Harris v. Cameron, 81 Wis. 239, 51 N.W. 437; People v. Schmidt, 221 App.Div. 77, 222 N.Y.S. 647, 650 (1927).

And, this Court has observed that an air pistol is not within the meaning of a firearm. Thompson v. LaFon, No. A–15,433, July 2, 1969.

The State urges that the object here is a "dangerous" pistol. Of course, it may be that under proper circumstances, an air pistol or toy gun might be used in such a manner as to become a "dangerous weapon" since "weapon" includes many objects besides firearms, depending upon their use. For example, a pellet gun used as a bludgeon was held to be a dangerous weapon in Rafferty v. State, 29 Wis.2d 470, 138 N.W. 2d 741 (1966); as was a toy cap pistol used as a bludgeon in People v. Ward, 84 Cal. App.2d 357, 190 P.2d 972 (1948). But, the air pistol herein was not "used" in any manner and the statutory prohibition is limited to firearms and does not include potentially dangerous objects.

We, therefore, hold that an air gun, as the Daisy $CO^2$ Air Compression Pistol herein, is not a firearm; and does not come within the meaning of 21 O.S.1961, § 1283, which prohibits felons from carrying firearms.

■■ Next, we consider the lawfulness of the search. We find the trial court was in error when it ruled the search disclosing the air gun was reasonable as incident to a lawful arrest. Although there is evidence the arrest for no tag light was a mere subterfuge to allow a search of the vehicle, it is not necessary to determine that issue. Assuming the arrest was legal, the search and seizure of the air gun was clearly the result of an exploratory search exceeding the reach of the arrestee, and thus not incident to the arrest. Further, a mere traffic violation, standing alone, does not warrant a search of the vehicle. The controlling rule is stated in Lawson v. State, Okl.Cr., 484 P.2d 1337 (1971):

"Ordinarily, a minor traffic violation will not support a search and seizure.

Where special circumstances justify search incident to arrest the area of permissible search is governed by the proximity of the arrestee to the point of search and the arrestee's access to the place searched while he is in the custody of the arresting officer.

Search incident to arrest is unreasonable if there is a lack of relation between the search and the offense for which the arrest was made.

On arrest for a traffic violation there is no lawful predicate for a search of the driver or the vehicle absent special circumstances where the officer has probable cause to search the area in which the arrestee may reach for a weapon or to destroy evidence of the crime for which he is arrested. A search exceeding these limits is constitutionally unreasonable and the fruits thereof inadmissible."

The same rule was recently re-stated in Watt v. State, Okl.Cr., 487 P.2d 961 (1971):

"A traffic citation for no automobile tag light absent other circumstances does not

justify a search of the automobile for weapons; and contraband hidden from view uncovered from between the seat cushions as the result of such a search is inadmissible in evidence as the fruits of an unreasonable search and seizure."

To the same effect, see: United States v. Humphrey, 409 F.2d 1055 (10th Cir. 1969), and State v. Curtis, 190 N.W.2d 631 (Minn. 1971).

It is to be remembered that even where a search is warranted incident to arrest, that search is limited to the "proximity of the arrestee to the point searched and the arrestee's access to the place searched." Fields v. State, Okl.Cr., 463 P.2d 1000, 1001 (1970). Where the arrestee is removed from his vehicle and placed in the police car, the search of the empty vehicle is clearly an area beyond the arrestee's reach. Accordingly, "there was no apparent justification for searching the glove compartment of the automobile since it was certainly not 'within his reach'." Fields v. State, supra, at 1004. Brinegar v. State, 97 Okl.Cr. 271, 262 P.2d 464, 466 (1953); and Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Thompson v. State, Okl.Cr., 487 P.2d 737 (1971).

The exploratory nature of the search is further indicated when the officer did not first search defendant's person, but rather searched the car. As we observed in Thompson v. State, supra:

"To say that the officer who turns his back on the driver whom he has arrested, while he first searches the driver's automobile is conducting a reasonable search incident to the arrest and not conducting an exploratory search staggers the credulity of anyone who pauses to examine the reasoning."

We, therefore, conclude the search and seizure was unlawful because the traffic violation alone did not support an intrusive search of the vehicle and because the search of the closed glove compartment of the empty car exceeded the reach of the arrestee and therefore was not incident to the arrest.

■■■ Aside from the above errors, each sufficient for reversal, we find the evidence was insufficient to convict due to the absence of proof of defendant's guilty knowledge. To constitute a crime, the act must be accompanied by a criminal intent on the part of the accused. Finley v. State, 84 Okl.Cr. 309, 181 P.2d 849. Generally, an implication or inference of criminal intent to commit a crime may arise from certain established facts. Thus, from the fact a gun was found in the glove compartment, it may be presumed defendant knew of its presence and intended to operate the vehicle containing the gun. However, the presumption of criminal intent is rebuttable and inference of criminal intent is removed by circumstances showing the absence of criminal intent.

To convict defendant for carrying a firearm in a vehicle which he was operating, it was necessary not only to show defendant was in the car when the gun was there, but also it must be shown defendant knew the gun was there. The presumption of guilty knowledge was removed by direct evidence that defendant had no knowledge of the presence of the gun. Defendant denied he knew the gun was in the car. Gilbert, the owner of the car, testified that the gun was his and that defendant did not know of its presence in the glove compartment. Other witnesses corroborated Gilbert had bought the gun and had used it outside the defendant's knowledge, and that defendant did not have such a gun and had not used such a gun. Thus, we have nothing more than the presumption of knowledge refuted by direct evidence of lack of knowledge. We find the presumption was rebutted and the inference removed.

The rule is settled that although a conviction may be obtained by circumstantial evidence, a conviction may not be obtained where the circumstances do not exclude every reasonable hypothesis except that of guilt. Williams v. State, Okl.Cr., 478 P.2d

**950**

359 (1970). Brown v. State, Okl.Cr., 481 P.2d 475 (1971).

Reversed and remanded with instructions to dismiss.

BRETT, J., concurs.

BUSSEY, P. J., not participating.