RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
───────────────

UNITED STATES OF AMERICA,
                     *Plaintiff-Appellee,*

               *v.*

ROSSAHN BLACK,
                     *Defendant-Appellant.*

No. 12-2373

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cr-20225-1—Gerald E. Rosen, Chief District Judge.

Argued: November 21, 2013

Decided and Filed: January 15, 2014

Before: MOORE and GRIFFIN, Circuit Judges; KORMAN, District Judge.[*]

───────────────

## COUNSEL

**ARGUED:** Brandy Y. Robinson, LEGAL AID & DEFENDER ASSOCIATION, INC., Detroit, Michigan, for Appellant. Stephanie M. Hays, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Brandy Y. Robinson, James R. Gerometta, LEGAL AID & DEFENDER ASSOCIATION, INC., Detroit, Michigan, for Appellant. Stephanie M. Hays, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

───────────────

## OPINION

───────────────

EDWARD R. KORMAN, District Judge. On December 7, 2009, Rossahn Black was arrested for driving without a license. Black had a starter pistol in his waistband and a live 7.62 caliber round in his pocket. A search of the car revealed five loaded firearms

───────────────
[*] The Honorable Edward Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

1

in the trunk of his car, including a 12 gauge shotgun, a .45 caliber Glock pistol, a .45 caliber Smith and Wesson revolver, a .380 caliber Jimenez Arms pistol, and a Romarm, Draco 7.62 caliber pistol. Black was subsequently convicted of three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

Because Black had three prior convictions for violent crimes, he was subject to enhanced penalties under the Armed Career Criminal Act (ACCA) and the National Firearms Act (NFA), 26 U.S.C. § 5845(e). These enhancements resulted in a base offense level of 34, pursuant to the Sentencing Guidelines, and a range of 262-327 months. The district court sentenced Black to 300 months in prison. This appeal followed.

Black raises three issues relating to rulings the trial judge made with respect to evidence that bore upon the issue of whether Black suffered from a severe mental disease or defect. Black also argues that the jury should have been instructed on the consequences of a verdict of not guilty by reason of insanity, and that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), is void for vagueness, a claim that he concedes is foreclosed by binding Sixth Circuit precedent. *See United States v. Taylor*, 696 F.3d 628, 633 (6th Cir. 2012). Black argues finally that the district court improperly construed the National Firearms Act, 26 U.S.C. § 5845, which affected his base offense level under the Sentencing Guidelines by raising it from 33 to 34 based on the type of firearm he possessed. *See* USSG § 4B1.4(b)(3)(A) (raising the base offense level when the "firearm possessed by the defendant was the type described in 26 U.S.C. § 5845(a).").

## DISCUSSION

We pass over all of Black's arguments except for the last one regarding the construction of 26 U.S.C. § 5845. We do so because the other arguments are without merit and because, as they relate to the Black's insanity defense, any error is harmless. Before turning to an extended discussion of 26 U.S.C. § 5845, we briefly discuss the evidence regarding the defense of insanity.

A.     **The Defense of Insanity**

At trial, Black had the burden of establishing his affirmative defense of not guilty by reason of insanity. As required by statute, Black had to prove by clear and convincing evidence that, at the time of the commission of the acts constituting the offense: (1) he suffered from a severe mental disease or defect, and (2) he was unable to appreciate the nature and quality or the wrongfulness of his acts as a result of that mental disease or defect. *See* 18 U.S.C. § 17; *see also Dixon v. United States*, 548 U.S. 1, 14 (2006). Black's arguments relate to the district court's rulings that affected his efforts to establish the first prong of the test. Even if these rulings prejudiced Black's effort to establish that he suffered from a severe mental disease or defect, any error was harmless because the evidence overwhelmingly establishes that he had the capacity to appreciate the wrongfulness of his acts.

First, Black repeatedly took steps to conceal the nature of his conduct. Indeed, on February 5, 2008, Black asked his girlfriend, Sharmika Robinson, to register his guns in her name because he had a felony conviction. While Black waited in her truck, Robinson registered three guns for Black, a .40 caliber pistol, a .45 caliber pistol, and a 7.62 caliber pistol. Black later sold the .40 caliber pistol to his other girlfriend's father, forging Robinson's signature. Subsequently, in April 2008, Black was arrested with two loaded pistols, including the .45 caliber pistol that Robinson had previously registered for Black. He gave the arresting officers an alias, a fake identification card, and a fake weapons permit. Finally, Black also had been convicted of two prior counts of unlawful gun possession, and had recently been released from prison.

If this overwhelming evidence were not enough to establish that Black appreciated and understood the wrongfulness of his acts, compelling evidence was presented to support the theory that Black was malingering. More significantly, while we have focused on the evidence affirmatively establishing that Black was able to appreciate the wrongfulness of his acts, as we have already observed, the burden of proof was on him to establish by clear and convincing evidence that he was unable to do so. On this record, we do not see how he could have possibly met that burden of proof.

Thus, any error that may have undermined his effort to establish mental disease or defect was harmless under the beyond a reasonable doubt standard that applies to errors of constitutional dimension and the less demanding standard that applies to errors of the kind at issue here. *Kotteakos v. United States*, 328 U.S. 750 (1946); *see also Brecht v. Abrahamson*, 507 U.S. 619 (1993).

**B.     National Firearms Act**

We turn now to the only issue in the case that requires more extended discussion. Black argues that one of the weapons he was convicted of possessing, a Romarm, Draco 7.62 caliber pistol, does not come within the sentencing enhancement for certain specified weapons under the National Firearms Act (NFA), 26 U.S.C. § 5845(e). Specifically, the NFA contains a list of certain weapons that trigger a sentencing enhancement; it also contains a catchall clause that triggers the enhancement for the possession of "any other weapon." 26 U.S.C. § 5845(e). The latter category, however, expressly excludes a "pistol."

Since the sixteenth century, as the Supreme Court of Illinois has observed, the term "pistol" has applied to a short firearm "intended to be aimed and fired from one hand." *People v. Borgeson*, 166 N.E. 451, 455 (Ill. 1929). This is consistent with the dictionary definition. Indeed, Webster's defines a pistol as "a short firearm intended to be held and fired with one hand." Webster's Unabridged Dictionary, Deluxe Ed. (2001). Similarly, the Oxford English dictionary refers to "[a] small fire-arm, with a more or less curved stock, adapted to be held, and fired by, one hand." Oxford English Dictionary 909 (2nd ed. 1989). Moreover, aside from the dictionary definition, to which we look in determining the ordinary meaning of words, *see United States v. Zabawa*, 719 F.3d 555, 559 (6th Cir. 2013), the case law addressing this issue applies the same definition. *See Davis v. State*, 215 So.2d 626, 626 (Fla. Dist. Ct. App. 1968) (defining "pistol" as "a generic word which encompasses the entire class of firearms designed either by the manufacturer or the possessor to be held and fired by one hand."); *Ruiz v. State*, 368 S.W.2d 609, 610 (Tex. Crim. App. 1963) (adopting the Webster's definition of a "pistol" as "a short firearm intended to be aimed and fired from one hand."); *Campbell*

*v. Commonwealth*, 174 S.W.2d 778, 779 (Ky. 1943) (same); *State v. Barr*, 102 S.W.2d 629, 632 (Mo. 1937) (same); *People v. Borgeson*, 166 N.E. 451, 455 (Ill. 1929).

Notwithstanding the well understood definition of a pistol, Black attempts to restrict the definition of a pistol to the time when it was originally manufactured. Specifically, when the weapon at issue here was originally made, it was intended to be fired with one hand and was only later modified by the addition of a vertical foregrip – a stabilizing grip that was attached to the front of the firearm so that it could be fired using two hands to improve accuracy and counter recoil. While such a weapon comes within the definition of "any other weapon" and would justify the sentencing enhancement to which he was subject, Black argues that the nature of the weapon at the time that he was arrested for possessing it is not controlling.

This peculiar argument is based on a regulation adopted pursuant to 26 U.S.C. § 7805, which conferred upon the Secretary of the Treasury, of which the Alcohol, Tobacco, and Firearms Division was then a part, the authority to "prescribe all needful rules and regulation for the enforcement" of the title containing the catchall provision at issue here. The regulation defines a "pistol" as a "weapon *originally* designed, made, and intended to fire a projectile (bullet) from one or more barrels when held in one hand." 27 CFR § 479.11 (emphasis added). The Ninth Circuit has held that the word "originally" modifies each of the verbs that follow it. *United States v. Fix*, 4 F.App'x. 324 (9th Cir. 2001) (unpublished). Consequently, any modifications to a pistol made after it was originally manufactured do not alter its status as a "pistol." *Id.* Under this interpretation, the Romarm would qualify as a pistol even though it was altered to be held in two hands at the time Black was in possession of the weapon.

We decline to follow this unpublished decision, even if it arguably construed the Code of Federal Regulations ("CFR") provision at issue in a plausible way. The responsibility for the enforcement of 26 U.S.C. § 5845(e) has been removed from the Secretary of the Treasury and placed in the hands of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") of the Department of Justice ("DOJ"). The latter, in turn, has adopted an interpretation different from that of the Ninth Circuit. Specifically,

the DOJ has construed the CFR in a way that is consistent with the plain language of the statute and the common definition of a pistol as a short firearm intended to be fired with one hand. In particular, it relies on the CFR's definition of "made," which includes "putting together, altering, any combination of these, or otherwise producing a firearm." 27 CFR § 479.11 (emphasis added); *See also* 26 U.S.C. § 5845(i). The DOJ then reads the definition of a "pistol" so that it applies to firearms that are "originally designed, [altered], and intended" to be fired with one hand. 27 CFR § 479.11. Significantly, as early as 2006, the DOJ advised that:

> ATF has long held that by installing a vertical fore grip on a handgun, the handgun is no longer designed to be held and fired by the use of a single hand. Therefore, if individuals install a vertical fore grip on a handgun, they are 'making' a firearm requiring registration with ATF's NFA Branch.

*Adding a Vertical Fore Grip to a Handgun*, U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (May 4, 2006), http://www.atf.gov/press/releases/2006/04/041006-openletter-nfa-adding-vertical-fore-grip.html. Because the CFR definition of a "pistol" is a creature of the ATF's own regulations, the ATF's interpretation of it is controlling unless "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 462 (1997) (internal citations and quotation marks omitted). While this may be a close call, we defer to the ATF's interpretation of its own regulation if only because it is plainly consistent with the language of 26 U.S.C. § 5845(e).

Moreover, the language of § 5845(e) is so clear that it arguably did not require an interpretive regulation, much less one that created so much confusion that it required a subsequent agency interpretation. Thus, the Supreme Court has held that "[i]n the context of an unambiguous statute, we need not contemplate deferring to the agency's interpretation." *Barnhart v. Sigmon Coal Co., Inc.*, 122 S.Ct. 941, 956 (2002) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). The term "pistol," as we have observed, has a well understood meaning that dates back to the sixteenth century and is reflected in the dictionary definition and case law that

followed.  Indeed, the CFR adopts this definition.  The only difference is its inexplicable focus on condition of the firearm at the time it was manufactured.

This consideration aside, an agency's interpretation of a statute that it enforces will only control if it is "based on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843;  *see Metro. Hosp. v. U.S. Dept. of Health and Human Servs.*, 712 F.3d 248, 254 (6th Cir. 2013).  Rather than providing such an interpretation, the construction for which Black argues would amend the statute to limit its scope in a way that is difficult to justify and would lead to the absurd result of exempting weapons which are modified to fall within the definition of "any other weapon" any time after they leave the factory.  We know from at least one other provision of 26 U.S.C. § 5845 that Congress intended to provide for a sentencing enhancement based on a weapon's capability in the present or the immediate future.  Thus, under the NFA, a firearm is classified as a machine gun if it shoots or is designed to shoot automatically, *or can be "readily restored" to shoot automatically*.  26 U.S.C. § 5845(b) (emphasis added).  In this case, a pistol was actually altered in such a way that it became a weapon subject to the sentencing enhancement within the catchall provision of § 5845(e).  We are unable to divine any reason why Congress would exclude such altered pistols from the definition of weapons triggering the sentencing enhancement.

In sum, at the time of his arrest, Black was in possession of a Romarm, Draco 7.62 caliber pistol with a vertical foregrip, which was no longer intended to be held and fired with one hand.  Consequently, the Romarm is not a pistol, and does qualify for the sentencing enhancement as "any other weapon."  26 U.S.C. § 5845(e).

### CONCLUSION

The judgment of conviction is **AFFIRMED**.