COMMONWEALTH *vs.* MANUEL I. AMORIN.

Bristol. June 9, 1982. — October 25, 1982.

Present: PERRETTA, KASS, & SMITH, JJ.

*Identification. Practice, Criminal,* Suppression of evidence by prosecution, Instructions to jury. *Firearms. Due Process of Law,* Vagueness of statute.

Presence of two eyewitnesses in the same room at the time they identified photographs of the defendant as their assailant did not, without more, constitute an impermissibly suggestive identification procedure. [555]

The prosecution's violation of a discovery agreement in failing to provide the defendant in a criminal case with six color photographs from which two witnesses had chosen a photograph of the defendant, in addition to the identifications they had made from six black and white photographs, did not, in the circumstances, prejudice the defendant. [555-556]

Instructions to the jury by the judge in a criminal case adequately explained the Commonwealth's burden of proof with respect to identification of the defendant. [556]

General Laws c. 269, § 10 (*a*) (4), which with G. L. c. 269, § 12B, exempts from firearm licensing requirements a minor carrying a BB gun under adult supervision or with a sporting or hunting license and a permit, does not exempt an adult carrying a BB gun from the licensing requirements of cc. 140 and 269. [556-558]

Provisions of G. L. c. 269, § 10 (*a*) (4), which exempt from firearm licensing requirements persons carrying a BB gun in compliance with c. 269, § 12B, and provisions of c. 269, § 12B, which permit carrying of a BB gun by a minor under adult supervision or with a sporting or hunting license and a permit, are not unconstitutionally vague even when read together. [558-559]

INDICTMENTS found and returned in the Superior Court Department on December 17, 1979.

A motion to suppress evidence was heard by *Taveira,* J., and the cases were tried before him.

*Antone B. Cruz, Jr.,* for the defendant.

*Phillip L. Weiner,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was convicted on indictments that charged armed robbery (G. L. c. 265, § 17), assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A),[1] and unlawfully carrying a firearm (G. L. c. 269, § 10[a]). He contends on appeal that: (1) his motion to suppress in-court identifications was wrongfully denied; (2) the failure of the prosecution to produce all of the photographs used in the identification procedure prejudiced his case; (3) the trial judge committed error in his instructions to the jury on the issue of identification; and (4) the trial judge erred in denying his motion for a required finding of not guilty on the indictment charging a violation of G. L. c. 269, § 10(a). We summarize the relevant evidence.

In the early morning hours of December 3, 1979, the victim and a woman companion were seated in a parked vehicle in New Bedford. After alighting from the passenger side, the victim was struck by a heavy object, later identified as a BB gun. The assailant demanded money and again struck the victim as he reentered the automobile. The assailant was beaten off by the victim's companion, who immediately drove the victim to the police station. Both the victim and his companion, at that time, gave descriptions of the assailant to the police.

Nine days after the incident, the victim and his companion were requested by the police to view photographs at the police station.[2] The woman companion examined about six black and white photographs and selected one. Out of a

---

[1] The conviction on the indictment charging a violation of G. L. c. 265, § 15A, was placed on file with the defendant's consent and is not before us on this appeal.

[2] The same judge who presided at the jury trial heard and denied the suppression motion and made oral findings on the record. We review and summarize the evidence given at the suppression hearing and the judge's findings in accordance with *Commonwealth* v. *Moon,* 380 Mass. 751, 755-756 (1980), and *Commonwealth* v. *Worlds,* 9 Mass. App. Ct. 162, 165-166 (1980).

second group of six color pictures, she selected another photograph. Both photographs were different views of the defendant, and she identified the photographs as depicting the assailant. The male victim looked at the six black and white and the six color photographs and selected the photographs of the defendant as his assailant.

1. *The denial of the motion to suppress.* The defendant assigns as error the denial of his motion to suppress the identifications. The defendant argues that the identifications were impermissibly suggestive because the two eyewitnesses were in the same room at the time they made the identifications. *Commonwealth* v. *Worlds,* 9 Mass. App. Ct. 162, 168-172 (1980). Although the eyewitnesses were in the same room, there was no evidence suggesting that the eyewitnesses viewed the photographs together or communicated to each other or were otherwise aware of their respective choices. The defendant also contends that because the police considered the defendant to be a suspect, they placed the defendant's photograph at the bottom of the arrays. There was no evidence that the police, at any time prior to or at the time of the identifications, called to the attention of the eyewitnesses the location of the defendant's photographs. The other alleged weaknesses in the photographic identification procedure "properly were left for consideration by the jury as bearing on the weight to be given the identifications." *Commonwealth* v. *Moynihan,* 376 Mass. 468, 477 (1978). Therefore, the defendant's motion to suppress the identifications (as well as the related motion for a required finding of not guilty) was rightfully denied. The defendant has failed to sustain his burden of demonstrating that the identification procedure was unfairly suggestive. *Commonwealth* v. *Botelho,* 369 Mass. 860, 865-868 (1976).

2. *The failure to produce all photographs.* At the suppression hearing the defendant learned, for the first time, that the eyewitnesses had made identifications from six color photographs, in addition to the identifications made from the six black and white photographs. The defendant contends that the Commonwealth violated a discovery

agreement to provide him with the details of the identification procedure and to permit him to examine all the photographs present in the arrays and that he was prejudiced by this failure of the Commonwealth. We hold that the defendant has not shown prejudice, especially in view of the fact that the judge, at the conclusion of the suppression hearing, suppressed the color photographs because of the failure of the Commonwealth to deliver them to the defendant. The eyewitnesses, at trial, did not refer to their out-of-court identifications made from the color photographs.

3. *The judge's charge on identification.* The defendant contends that the judge erred in not instructing the jury that in regard to the identifications, the Commonwealth must prove them beyond a reasonable doubt. We are satisfied that the judge's instructions, when reviewed as a whole, adequately explained to the jury the Commonwealth's burden on all the essential elements of the charged crimes, including identification. See *Commonwealth* v. *Alleyne,* 10 Mass. App. Ct. 28, 30-31 (1980); *Commonwealth* v. *Durant,* 10 Mass. App. Ct. 768, 772-773 (1980).

4. *Motion for required finding of not guilty on firearm charge.* The defendant assigns as error the trial judge's denial of a motion for a required finding of not guilty on the charge of carrying a firearm without a license in violation of G. L. c. 269, § 10(*a*). At trial, a ballistics expert testified that the BB gun, with a barrel of less than three inches long, identified by the victim and his companion as the weapon used in the robbery, was capable of discharging BB shot, and gave as his opinion that the BB gun was a firearm within the meaning of the statute. See G. L. c. 140, §§ 121 & 122. The defendant contends that G. L. c. 269, § 10(*a*)(4), exempts adults who carry BB guns from criminal prosecution and from the licensing requirements of G. L. c. 140. The defendant states that the only prohibition against the carrying of BB guns is that found in G. L. c. 269, § 12B, which forbids the possession of BB or air guns by a minor, except by permit or when under adult supervision. Alter-

natively, he argues that §§ 10(a) and 12B, read together, are unconstitutionally vague.

The defendant does not contest that a BB gun, capable of discharging BB shots, is within the definition of a firearm set out in G. L. c. 140, § 121. See generally *Commonwealth* v. *Sampson*, 383 Mass. 750, 761-762 (1981).[3] As a firearm, it is subject to the licensing requirements of cc. 140 and 269 and, therefore, carrying a BB gun is a criminal offense under G. L. c. 269, § 10(a), unless a statutory exemption applies.[4] Only one such exemption is at issue in this case, G. L. c. 269, § 10(a)(4), which applies to persons carrying BB guns who are in compliance with G. L. c. 269,

---

[3] See also Rep. A.G., Pub. Doc. No. 12, at 62 (1948), wherein it states that air guns capable of discharging BB shots are within the definition of a firearm and can only be legally carried by one holding a license to carry firearms.

[4] General Laws c. 269, § 10(a), as appearing in St. 1975, c. 113, § 2, provides in relevant part:

"Whoever, except as provided by law, carries on his person, or carries on his person or under his control in a vehicle, a firearm, loaded or unloaded, as defined in section one hundred and twenty-one of chapter one hundred and forty without either:

(1) having in effect a license to carry firearms issued under section one hundred and thirty-one of chapter one hundred and forty; or

(2) having in effect a license to carry firearms issued under section one hundred and thirty-one F of chapter one hundred and forty; or

(3) complying with the provisions of section one hundred and twenty-nine C and one hundred and thirty-one G of chapter one hundred and forty; or

(4) having complied as to possession of an air rifle or BB gun with the requirements imposed by section twelve B of chapter two hundred and sixty-nine;

". . . .

shall be punished by imprisonment in the state prison for not less than two and one-half nor more than five years, or for not less than one year nor more than two and one-half years in a jail or house of correction. The sentence imposed upon such person shall not be reduced to less than one year, nor suspended . . . ."

§ 12B, that is, a minor with a sporting or hunting license and a permit or under adult supervision.[5]

Nothing in G. L. c. 269, §§ 10(a) and 12B, suggests that G. L. c. 140 and G. L. c. 269 do not apply to adults carrying BB guns other than might be entailed in accompanying a minor under G. L. c. 269, § 12B. Rather, the two sections should be viewed as having an entirely different purpose, namely, to provide a limited exception, in the case of BB guns and air rifles, to the general statutory prohibition against the carrying of firearms by minors.[6] Thus, although a minor may not obtain a firearms license, G. L. c. 269, § 12B, allows a minor, by license and permit or under adult supervision, to legally carry a BB gun without such a license. General Laws c. 269, § 10(a), may be viewed simply as a parallel to G. L. c. 269, § 12B, exempting minors who carry BB guns with a license and permit or under adult supervision from the penalties prescribed for the unlicensed carrying of firearms.[7]

We find without merit the defendant's further contention that, when read together, G. L. c. 269, §§ 10(a) and 12B, are unconstitutionally vague. A criminal statute is unconstitutionally vague "if it is not sufficiently explicit to give

---

[5] General Laws c. 269, § 12B, as appearing in St. 1957, c. 688, § 31, provides in relevant part:

"No minor under the age of eighteen shall have an air rifle or so-called BB gun in his possession while in any place to which the public has a right of access unless he is accompanied by an adult or unless he is the holder of a sporting or hunting license and has on his person a permit from the chief of police of the town in which he resides granting him the right of such possession."

[6] General Laws c. 140, § 131, authorizes the licensing of only persons eighteen years or older to carry firearms. General Laws c. 140, §§ 129B and 129C(k), permits minors to own firearms under certain conditions.

[7] It should be noted that by its terms G. L. c. 269, § 10(a), requires that any minor seventeen or older convicted for unlawfully carrying a firearm be sentenced to at least one year's imprisonment. On appropriate finding by the court, minors between the ages of fourteen and seventeen may be similarly punished. The severity of that penalty further underscores our reading of the statutes which, but for §§ 10(a) and 12B, provide that a minor could never legally carry a firearm.

clear warnings as to proscribed activities." *Commonwealth v. Orlando,* 371 Mass. 732, 734 (1977). *Commonwealth v. A Juvenile,* 368 Mass. 580, 586-587 (1975). A law, however, is not vague "if it requires a person to conform his conduct to an imprecise but comprehensible normative standard [such] that men of common intelligence will know its meaning." *Commonwealth* v. *Orlando,* 371 Mass. at 734. As noted earlier, we find the meaning of both sections, read in the context of the comprehensive firearms regulations enacted by the Legislature, to be susceptible to only one interpretation, readily understandable.

The defendant here, an adult found to be carrying a BB gun, could, therefore, be found to have violated G. L. c. 269, § 10(a).[8] The trial judge properly submitted that question to the jury.[9] See *Commonwealth* v. *Sampson,* 383 Mass. at 761.

*Judgments affirmed.*

---

[8] The defendant produced no evidence that he had a valid Massachusetts license to carry a firearm, a burden that rests with him. G. L. c. 278, § 7. See *Commonwealth* v. *Jones,* 372 Mass. 403 (1977); *Commonwealth* v. *Walker,* 372 Mass. 411 (1977).

[9] We note that our reading of the firearms statutes is in harmony with the legislative history of the comprehensive amendments to G. L. c. 269, § 10, enacted by the Legislature in 1975. Shortly after the House Committee on Public Safety reported favorably on House Bill No. 5688, which included in draft form the revised § 10(a), (1975 House Journal 1230), the committee reported unfavorably on House Bill No. 1977. 1975 House Journal 1291 & 1310. House Bill No. 1977 would have amended G. L. c. 140, § 121, to exempt air guns from the definition of firearms, and G. L. c. 269, § 12B, to allow the possession in public places of air guns by anyone holding a firearm ownership identification card.

We also note that our reading of § 10(a) is consistent with the balance of § 10, which enumerates a variety of weapons, many inherently less dangerous than a BB gun, and specific mandatory penalties for the unlawful carrying of those weapons. G. L. c. 269, § 10. See Nolan, Criminal Law § 307 (1976).