Commonwealth vs. Earl V. Rhodes.

Suffolk. May 2, 1983. — July 8, 1983.

Present: Hennessey, C.J., Liacos, Nolan, Lynch, & O'Connor, JJ.

*Firearms.*

A complaint charging a defendant with violating G. L. c. 269, § 10(*a*), by carrying on his person a .177 calibre air-powered BB pistol designed to shoot BB's and incapable of firing bullets was properly dismissed on the ground that c. 269, § 12B, contained the exclusive regulatory scheme for the possession of air rifles and BB guns and that no violation of § 12B was charged with respect to the defendant. [642-647]

Complaint received and sworn to in the Boston Municipal Court Department on July 10, 1981.

On appeal to the jury session of that court, a motion to dismiss was heard by *Cratsley, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

*J. W. Carney, Jr.,* for the defendant.

Lynch, J. The defendant, Earl V. Rhodes, was found guilty after a bench trial in a District Court of unlawfully carrying a firearm without a license. G. L. c. 269, § 10(*a*).[1] He was sentenced to one year in a house of correction and

[1] General Laws c. 269, § 10(*a*), as appearing in St. 1975, c. 113, § 2, states in pertinent part: "Whoever, except as provided by law, carries on his person, or carries on his person or under his control in a vehicle, a firearm, loaded or unloaded, as defined in section one hundred and twenty-one of chapter one hundred and forty without either: (1) having in effect a license to carry firearms issued under section one hundred and thirty-one of chapter one hundred and forty; or (2) having in effect a

thereafter appealed to the jury session of the Boston Municipal Court. The defendant then moved to dismiss the complaint on the ground that G. L. c. 269, § 10(a), was unconstitutionally vague as applied to this case. The motion to dismiss was allowed on the ground that G. L. c. 269, § 12B, contains the exclusive regulatory scheme for the use of air rifles and BB guns and that no violation of that section was charged with respect to this defendant. The Commonwealth appealed from this decision, pursuant to Mass. R. Crim. P. 15(a)(3)(b), 378 Mass. 882 (1979), and we took the case on our own motion.

From the uncontroverted affidavit of the defendant's counsel and the judge's findings on the defendant's motion to dismiss, it appears that the defendant was charged and found guilty of violating G. L. c. 269, § 10(a), as a result of carrying on his person a .177 calibre air-powered BB pistol designed to shoot BB's and incapable of firing bullets. The air pressure for the operation of this pistol is generated by manually cocking the gun.

This case presents the issue of whether or not § 12B of G. L. c. 269 contains the exclusive statutory regulation of

license to carry firearms issued under section one-hundred and thirty-one F of chapter one hundred and forty; or (3) complying with the provisions of section one hundred and twenty-nine C and one hundred and thirty-one G of chapter one hundred and forty; or (4) having complied as to possession of an air rifle or BB gun with the requirements imposed by section twelve B of chapter two hundred and sixty-nine; and whoever carries on his person, or carries on his person or under his control in a vehicle a rifle or shotgun, loaded or unloaded, without either: (1) having in effect a license to carry firearms issued under section one hundred and thirty-one of chapter one hundred and forty; or (2) having in effect a license to carry firearms issued under section one hundred and thirty-one F of chapter one hundred and forty; or (3) having in effect a firearm identification card issued under section one hundred and twenty-nine B of chapter one hundred and forty; or (4) having complied as to carrying, with the requirements imposed by section one hundred and twenty-nine C of chapter one hundred and forty upon ownership or possession of rifles and shotguns; (5) having complied as to possession of an air rifle or BB gun with the requirements imposed by section twelve B of chapter two hundred and sixty-nine; shall be punished by imprisonment in the state prison for not less than two and one-half nor more than five years or for not less than one year nor more than two and one-half years in a jail or house of correction."

the possession and carrying of air rifles and BB guns. If it does not, we must decide whether or not the BB gun in question is a firearm within the meaning of G. L. c. 140, § 121, and, if so, whether the application of G. L. c. 269, § 10(a), to the defendant would be unconstitutionally vague on the facts of this case. There was no error.

General Laws c. 140, § 121, defines "firearm" as a "pistol, revolver, or other weapon of any description loaded or unloaded from which a shot or bullet can be discharged and of which the length of barrel is less than sixteen inches."[2] "This definition . . . may be broken down into three requirements: the instrument in question must be (1) a weapon, (2) capable of discharging a shot or bullet, and (3) under a certain length." *Commonwealth* v. *Sampson*, 383 Mass. 750, 753 (1981). Although an air gun or BB gun, which does not propel a projectile by means of an explosion, would not ordinarily be considered a firearm,[3] the term is a statutory word of art which by proper definition could include such an instrument. *Commonwealth* v. *Seay*, 376 Mass. 735, 738 (1978).

The judge of the Municipal Court found that the gun in question was a firearm, as defined in G. L. c. 140, § 121. Under the rubric of *Commonwealth* v. *Sampson, supra* at 755, that finding requires as a predicate that it was designed to injure or incapacitate. The gun found in the possession of the defendant had the potential to fire a single .177 calibre BB with a force not capable of penetrating dungarees at a distance of twenty feet and it required another manual cocking of the spring before another such projectile could be fired. Although an expert testified for

---

[2] We assume for the purposes of this discussion that a .177 calibre BB, which can be discharged by the weapon in question, is a shot as required by that definition.

[3] Webster's Third New Int'l Dictionary at 854 (1968) defines "firearm" as "a weapon from which a shot is discharged by gun powder usually used only of small arms." The American Heritage Dictionary of the English Language at 494 (1971) defines "firearm" as "[a]ny weapon capable of firing a missile, especially a pistol or rifle using an explosive charge as a propellant."

the Commonwealth that the gun was, in his opinion, a weapon as defined by the statute, he gave no opinion on the purpose for which the gun was designed.[4] The judge's conclusion that the gun was a firearm was, therefore, questionable since it was not a firearm in the commonly accepted sense of the term and was not clearly shown to be a weapon under the statutory definition. It is not necessary to decide this issue, however, since we conclude that the judge was correct in holding that the provisions of G. L. c. 269, § 12B, contain the exclusive regulatory language governing the possession of air rifles and BB guns.[5] That section provides in pertinent part that no minor shall possess an air rifle or BB gun unless he is accompanied by an adult or is the holder of a sporting or hunting license; that no minor shall discharge an air rifle or BB gun unless he is accompanied by an adult or is so licensed, and that no person shall discharge an air rifle or BB gun into, from, or across any public way. Whoever is found in violation of this section shall be punished by a fine of not more than $100, and the air rifle or BB gun shall be confiscated.

---

[4] A certificate by a ballistics expert of the Department of Public Safety is prima facie evidence that an item is a firearm within the meaning of the statute. G. L. c. 140, § 121A. The expert who testified in this case was a member of the Boston police department, not the Department of Public Safety.

[5] General Laws c. 269, § 12B, states: "No minor under the age of eighteen shall have an air rifle or so-called BB gun in his possession while in any place to which the public has a right of access unless he is accompanied by an adult or unless he is the holder of a sporting or hunting license and/has on his person a permit from the chief of police of the town in which he resides granting him the right of such possession. No person shall discharge a BB shot, pellet or other object from an air rifle or so-called BB gun into, from or across any street, alley, public way or railroad or railway right of way, and no minor under the age of eighteen shall discharge a BB shot, pellet or other object from an air rifle or BB gun unless he is accompanied by an adult or is the holder of a sporting or hunting license. Whoever violates this section shall be punished by a fine of not more than one hundred dollars, and the air rifle or BB gun or other weapon shall be confiscated. Upon a conviction of a violation of this section the air rifle or BB gun or other weapon shall, by the written authority of the court, be forwarded to the commissioner of public safety, who may dispose of said article in the same manner as prescribed in section ten."

In order for the defendant to have been properly found in violation of G. L. c. 269, § 10(a), therefore, none of the four exceptions enumerated in that section can apply. The first three exceptions require licenses or a firearms identification card to exempt a person from the application of the statute. The fourth exception reads in pertinent part: "Whoever . . . carries on his person . . . a firearm . . . as defined in [§ 121 of G. L. c. 140], without . . . having complied as to possession of an air rifle or BB gun with the requirements imposed by [§ 12B of G. L. c. 269] . . . shall be punished by imprisonment in the state prison . . . ." G. L. c. 269, § 10(a)(4). When exception four is parsed in this manner and compared with the preceding exceptions it appears that the statute treats compliance with § 12B as the equivalent of the possession of a license or firearm identification card. Section 12B does not regulate the possession of an air gun by an adult. An adult in possession of an air gun can, therefore, be said not to be in violation of its provisions. The Commonwealth argues, however, that the possession provisions of § 12B exempt only conduct by minors from the general statutory scheme requiring licenses or identification cards for the possession by adults of any firearm. In support of this argument the Commonwealth relies upon a recent decision by the Appeals Court and upon a 1971 amendment to G. L. c. 140, § 129C, which deleted from the statute a specific exemption for air rifles and BB guns with a barrel length of sixteen inches or over and the requirement of an identification permit for possession or ownership of a rifle or other firearms. *Commonwealth* v. *Amorin,* 14 Mass. App. Ct. 553 (1982). St. 1971, c. 456, § 4.

To adopt the interpretation advanced by the Commonwealth, however, would lead to anomalous results. In permitting a minor to possess and use air guns when accompanied by an adult, the Legislature has obviously concluded that, in the use of air guns, it is appropriate to temper juvenile impulses and high spirits with mature adult judgment. If in the exercise of that mature judgment a parent or adult were to conclude that the further use or possession of

the air gun by the juvenile was inappropriate and took possession of it, under the Commonwealth's interpretation that exercise of judgment would subject an adult not coming within one of the other exceptions to the one-year mandatory jail sentence. This would be so even if the judgment to take possession of the weapon was clearly reasonable and appropriate in the circumstances. Since the Legislature has sought to limit the unsupervised use of air guns by minors, we conclude that it could not have intended such a penalty to fall upon an adult who, either through inadvertence or in the exercise of sound judgment, comes into possession of a juvenile's air gun.

The 1971 amendment to G. L. c. 140, § 129C, does not, as argued by the Commonwealth, require that interpretation. Prior to the 1971 amendment § 129C implied that an air gun with a barrel length under sixteen inches was a firearm. At the same time G. L. c. 269, §§ 10(a)(4) and 12B, permitted the possession of an air rifle or BB gun by a minor without any distinction as to its barrel length. The other licenses that exempted a person carrying a firearm from the criminal sanctions of c. 269, § 10(a) could not then, as now, be issued to minors. Under the earlier version of the statute, therefore, the implication that an air gun with a barrel length of under sixteen inches was a firearm was inconsistent with the exemption that permitted the possession of an air rifle or BB gun by a minor. The Legislature could have intended to eliminate that inconsistency by deleting the reference to air guns with a barrel length of over sixteen inches from § 129C. In any case, the Legislature has demonstrated its capacity to differentiate between air guns and other guns and has expressed its intent that minors, at least, be permitted to possess some type of air gun without complying with the formal procedures necessary to permit the legal possession of other types of guns. In this context, if the Legislature intended to require a license for possession by an adult of any type of air gun it should have done so more precisely. A criminal statute must be sufficiently explicit to give clear warning as to pro-

scribed activities, *Commonwealth* v. *Orlando,* 371 Mass. 732, 734 (1977), with any ambiguities to be construed strictly against the Commonwealth. *Commonwealth* v. *Marrone,* 387 Mass. 702, 706 (1982). We therefore adopt an interpretation of the statute which we feel gives full meaning to the apparent legislative intent without running afoul of the doctrines of strict construction or unconstitutional vagueness; and we conclude that G. L. c. 269, § 12B, is the exclusive statutory regulation of air rifles and BB guns and therefore, that the motion to dismiss was properly allowed, the defendant not having been charged with a violation of that section.

*Order affirmed.*