COMMONWEALTH *vs.* TIMOTHY G. FENTON.

Essex.  June 12, 1984. — September 13, 1984.

Present: ARMSTRONG, PERRETTA, & DREBEN, JJ.

*Firearms.*

A ".22 caliber Crosman Model 38T $CO_2$ revolver" carried by a defendant convicted of unlawfully carrying a firearm under G. L. c. 269, § 10(*a*), was an "air rifle or BB gun" within the fourth exception to § 10(*a*), as considered in *Commonwealth* v. *Rhodes*, 389 Mass. 641, 646-647 (1983), and consequently, the defendant was unlawfully convicted under that statute. [538-540]

INDICTMENT found and returned in the Superior Court Department on February 9, 1981.

A motion for postconviction relief was heard by *Linscott*, J.

*Steven J. Rappaport* for the defendant.

*Lila Heideman*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. In 1981 the defendant was convicted of unlawfully carrying a firearm (G. L. c. 269, § 10[*a*]) and was sentenced to three to five years at the Massachusetts Correctional Institution, Walpole.[1] After the decision of the Supreme Judicial Court in *Commonwealth* v. *Rhodes*, 389 Mass. 641 (1983), the defendant filed a motion for release from unlawful restraint pursuant to Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979). Relying on *Rhodes, supra* at 644, he claims that the carbon dioxide ($CO_2$) powered revolver he was carrying is an air gun within the fourth exception of G. L. c. 269, § 10(*a*),[2] and that he cannot, therefore, be lawfully convicted under that statute.

[1] The Commonwealth asserts in its brief that the defendant was to be released on May 31, 1984.

[2] General Laws c. 269, § 10(*a*), as amended through St. 1978, c. 175, §§ 1 & 2, provides in relevant part as follows: "Whoever, except as provided

The defendant's motion was denied by a Superior Court judge. As *Rhodes* excludes all types of air guns from the operation of G. L. c. 269, § 10(*a*), and as the gun in question comes within a common lexical definition of the term "air gun" or "air rifle," we reverse.

For purposes of this opinion, we assume without deciding that the gun in question is a firearm. But see *Commonwealth* v. *Rhodes, supra,* at 643 & n.3, 644; *Douglas* v. *State,* 37 Md.App. 557, 559 (1977); *Thompson* v. *State,* 488 P.2d 944, 947-948 (Okl. Cr. App. 1971), overruled on other grounds by *Dolph* v. *State,* 520 P.2d 378 (Okl. Cr. App. 1974). The judge so ruled and, unlike *Commonwealth* v. *Rhodes,* 389 Mass. at 644 n.4, there was here in evidence a certificate by a ballistics expert of the Department of Public Safety, see G. L. c. 140, § 121A,[3] stating that in his opinion the gun is a firearm within the meaning of c. 140, § 121.

A determination that the gun is a firearm is, however, not sufficient. To sustain a conviction under G. L. c. 269, § 10(*a*), "none of the four exceptions enumerated in that section can apply." *Rhodes, supra* at 645. The Supreme Judicial Court construed the fourth exception of c. 269, § 10(*a*), as not to

---

by law, carries on his person, or carries on his person or under his control in a vehicle, a firearm, loaded or unloaded, as defined in section one hundred and twenty-one of chapter one hundred and forty without either:

"   . . . .

(4) having complied as to possession of an air rifle or BB gun with the requirements imposed by section twelve B of chapter two hundred and sixty-nine;

"   . . . .

shall be punished by imprisonment in the state prison for not less than two and one-half nor more than five years, or for not less than one year nor more than two and one-half years in a jail or house of correction . . . ."

[3] General Laws c. 140, § 121A, inserted by St. 1972, c. 268, provides as follows: "A certificate by a ballistics expert of the firearms identification section of the department of public safety of the result of an examination made by him of an item furnished him by any police officer, signed and sworn to by such expert, shall be prima facie evidence of his findings as to whether or not the item furnished is a firearm, as defined by section one hundred and twenty-one, provided that in order to qualify as an expert under this section he shall have previously qualified as an expert in a court proceeding."

"require a license for possession by an adult of any type of air gun." *Id.* at 646. Section 12B[4] was held to be the exclusive regulatory provision governing the possession of air rifles and BB guns, *id.* at 644, 646, and that section "does not regulate the possession of an air gun by an adult." *Id.* at 645.

We thus turn to the question whether the gun, a .22 caliber Crosman Model 38T $CO_2$ revolver, is an "air rifle or BB gun" within the statutory exception. While we note that neither G. L. c. 269, § 10(*a*), nor § 12B, speaks of air guns, but rather of "BB guns" or air "rifles," the specific language of *Rhodes* excludes "any type of air gun" from the onerous penalties of G. L. c. 269, § 10(*a*).[5]

This broad language (perhaps based, in part, on the court's questioning whether an air gun is a firearm in the first instance, *Rhodes* at 644) and the decision's emphasis on the doctrine of strict construction as applied to this criminal statute, *id.* at 646, leads us to reject as inappropriate any distinction based on the fact that the weapon here involved is a handgun rather than a rifle.[6]

---

[4] General Laws c. 269, § 12B, as amended through St. 1968, c. 737, § 16, reads as follows: "No minor under the age of eighteen shall have an air rifle or so-called BB gun in his possession while in any place to which the public has a right of access unless he is accompanied by an adult or unless he is the holder of a sporting or hunting license and has on his person a permit from the chief of police of the town in which he resides granting him the right of such possession. No person shall discharge a BB shot, pellet or other object from an air rifle or so-called BB gun into, from or across any street, alley, public way or railroad or railway right of way, and no minor under the age of eighteen shall discharge a BB shot, pellet or other object from an air rifle or BB gun unless he is accompanied by an adult or is the holder of a sporting or hunting license. Whoever violates this section shall be punished by a fine of not more than one hundred dollars, and the air rifle or BB gun or other weapon shall be confiscated. Upon a conviction of a violation of this section the air rifle or BB gun or other weapon shall, by the written authority of the court, be forwarded to the commissioner of public safety, who may dispose of said article in the same manner as prescribed in section ten."

[5] A violation of c. 269, § 12, results in a $100 fine, while a violation of c. 269, § 10(*a*), requires a mandatory term of imprisonment.

[6] Both Webster's Third New Int'l Dictionary 1954 (1971) and American Heritage Dictionary 1117 (1976) define "rifle" as a firearm with a rifled bore designed to be fired from the shoulder.

As there is no statutory definition of the term air rifle or BB gun, we look to the common lexical meanings of those terms.[7] One widely used dictionary, Webster's Third New Int'l Dictionary 47 (1971), defines air rifle as "a rifle from which a projectile is propelled by air or carbon dioxide compressed usually by a lever and pump system." The Firearms Encyclopedia states that an air gun is "[a] form of gun using compressed air or compressed gas to launch a projectile through a conventional smooth or rifled barrel."[8] Nonte, Firearms Encyclopedia 5 (1973). Although other definitions may be more restrictive, see e.g., American Heritage Dictionary 28 (1976), which defines an air rifle as "[a] low-powered rifle, such as a BB gun, using manually compressed air to fire small pellets," in the absence of a statutory definition, the ambiguity must be construed against the Commonwealth. *Rhodes* at 646-647. As that decision points out, if such guns are to be regulated, the Legislature must explicitly so state.

Accordingly, we hold that the defendant's conviction under G. L. c. 269, § 10(*a*), was not in accordance with a proper construction of the statute and that he was unlawfully restrained.

The order denying the defendant's motion under Mass.R. Crim.P. 30(a) is reversed. The judgment of conviction is reversed, the finding of guilty is set aside, and a new judgment is to enter for the defendant.

*So ordered.*

---

[7] A BB gun is defined in the American Heritage Dictionary 114 (1976), as "[a] small air rifle for firing BB shot," and by Webster's Third New Int'l Dictionary 189 (1971), as "a smooth-bore air gun actuated by a spring-loaded plunger that upon release from the cocked position compresses the air behind the pellet and propels it from the tube."

[8] We do not rely on the opinion of the Commonwealth's ballistics expert, as we consider the question whether a $CO_2$ gun is an air gun to be a question of law, see *Commonwealth* v. *Sampson*, 383 Mass. 750, 761 (1981). We note, however, that the expert when asked whether he had read any books in order to familiarize himself with the gun in question, answered: "Well, I've read books from Crosman. I've read an air gun digest that we have in the section, and I've read a book from my own library at home on air guns." This would suggest that, at least at the outset, he considered the gun a form of air gun. He was never asked whether the gun was an air gun.