# Weld for Governor & others[1] *vs.* Director of the Office of Campaign and Political Finance & another.[2]

Suffolk. May 10, 1990. - July 2, 1990.

Present: Liacos, C.J., Abrams, Nolan, O'Connor & Greaney, JJ.

*Political Committee. Statute,* Construction. *Constitutional Law,* Freedom of speech and press. *Words,* "Contribution," "Expenditure."

Expenditures incurred by two political campaign committees for the joint purchase of campaign buttons, vehicle bumper stickers, and signs bearing both candidates' names did not constitute contributions from one committee to the other within the prohibition of G. L. c. 55, § 6, first par., in circumstances where the two candidates had publicly declared themselves to be running for the offices of Governor and Lieutenant Governor as a bona fide "team"; the nature of the offices is such that close cooperation between the office-holders is required on a daily basis; the joint purchases did not include general public political advertising; the costs were allocated between the candidates in a manner reflecting the relative value reasonably expected to be derived by each; and there had been no suggestion of dishonesty. [764-772] O'Connor, J., dissenting.

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on April 3, 1990.

The case was reported by *Lynch, J.*

*Charles Fried* (*Paul W. Johnson* with him) for the plaintiffs.

*Ruth A. Bourquin,* Assistant Attorney General, for the Attorney General & another.

---

[1]Cellucci Committee, William F. Weld and Argeo Paul Cellucci, individually, and the chairmen and treasurers of the Weld and Cellucci political committees.

[2]The Attorney General.

*Richard L. Neumeier*, for Common Cause/Massachusetts, amicus curiae, submitted a brief.

GREANEY, J. The plaintiffs William F. Weld and Argeo Paul Cellucci are Republican candidates for the offices of Governor and Lieutenant Governor, respectively. They, together with their respective political committees and certain officers thereof, commenced this action in the Supreme Judicial Court for Suffolk County against the director of the office of campaign and political finance (OCPF) and the Attorney General, the State officials empowered to investigate and prosecute alleged violations of the campaign finance laws. In their complaint, the plaintiffs sought a declaration pursuant to G. L. c. 231A (1988 ed.), that joint expenditures they have made for the purchase of campaign buttons, bumper stickers, and signs bearing the names of both candidates do not constitute unlawful "contributions" prohibited by G. L. c. 55, § 6 (1988 ed.). In the alternative, the plaintiffs requested a declaration that § 6, as applied to them, violates art. 16 and art. 19 of the Massachusetts Declaration of Rights, and the First Amendment to the United States Constitution.[3] A single justice of this court accepted the parties' statement of agreed facts and allowed their joint request for reservation and report of the case to the full court.

The statement of agreed facts discloses the following. On September 29, 1989, the plaintiffs Weld and Cellucci publicly announced their candidacies for the offices of Governor and Lieutenant Governor, endorsed each other's candidacy, and announced that they intended to run together as a "team" in the primary election, and, if nominated, in the general election. Shortly thereafter, the candidates met with officials of OCPF to discuss the application of G. L. c. 55 to

---

[3]The plaintiffs also sought a preliminary injunction prohibiting the defendants from barring such expenditures in the future, and from initiating any criminal prosecution of any of the plaintiffs for making such expenditures in the past. The injunction request is not before us, however, because the defendants have agreed not to take any enforcement action against the plaintiffs prior to the general election with respect to any expenditures made by the political committees.

their joint candidacy. In response to OCPF's suggestion, Weld for Governor and the Cellucci Committee (committees), political committees organized pursuant to G. L. c. 55, § 5, to promote the candidacies of Weld and Cellucci, requested an advisory opinion from OCPF concerning the legality of joint purchases of campaign buttons, bumper stickers, and signs bearing both candidates' names. Of particular concern to the committees was the legality of their proposed joint purchases under G. L. c. 55, § 6, first par., which provides, in pertinent part, that "no [political committee] may contribute to any other political committee or to the campaign fund of any other candidate." In their request, the committees stated that the cost of the campaign items would be split evenly between them, and that each committee would pay one-half of the cost by separate check. (The committees have, from their inception, maintained separate treasuries.[4])

On January 5, 1990, OCPF declined to issue an advisory opinion because the committees already had purchased the items regarding which the opinion had been requested. However, OCPF did indicate that it would soon issue an interpretative bulletin clarifying its interpretation of G. L. c. 55, § 6. That bulletin was issued on March 15, 1990, and reads, in pertinent part, as follows:

> "It is the opinion of this office that a joint expenditure by two or more committees which permits each participating committee to obtain the benefit of the full value of the goods or services for which the joint expenditure is made would result in one committee transferring something of value to each other committee. This trans-

[4]Since September 29, 1989, each committee has expended $1,817 for the purchase of campaign buttons bearing the names of Weld and Cellucci, $2,178 for the purchase of bumper stickers bearing the names of both candidates, and $8,279.44 for the purchase of signs carrying both names. Decisions as to what items were to be purchased and the amounts to be expended for such items were made after consultation and mutual agreement by the two committees. Each committee took possession of one-half of the purchased items.

fer would occur even if each committee pays a pro rata share of the costs and directly controls the use of only a pro rata share of such goods or services. Such expenditure would therefore be subject to the contribution limitations contained in section 6 of M.G.L. c. 55." (Footnote omitted.)

OCPF defines a "joint expenditure" as "any expenditure that is made in cooperation or consultation with any candidate, or a nonelected political committee organized on behalf of a candidate, or any agent of a candidate, or made in concert with, or at the request or suggestion of, any candidate, or any nonelected political committee organized on behalf of a candidate or agent of such candidate." The bulletin cast serious doubt on the legality of the plaintiffs' joint expenditures, and it prompted this lawsuit for declaratory relief.

The primary issue presented is one of statutory interpretation — whether the joint expenditures made by the committees for the purchase of campaign buttons, bumper stickers, and signs bearing the names of Weld and Cellucci constitute prohibited "contributions" within the meaning of the first paragraph of G. L. c. 55, § 6.[5] If the case can be resolved on a statutory interpretation basis (we conclude that it can) there is no need to address the constitutional issues argued.

The term "[c]ontribution" is defined, in relevant part, by G. L. c. 55, § 1 (1988 ed.), as follows: " 'Contribution,' a contribution of money or anything of value to an individual, candidate, political committee, or person acting on behalf of said individual, candidate or political committee, for the pur-

---

[5]"A political committee organized or operating on behalf of a candidate for the office of governor, lieutenant governor, attorney general, state secretary, treasurer and receiver general, or auditor may receive, pay and expend money or other things of value for reasonable and necessary expenses directly related to the campaign of such candidate but shall not make any expenditure that is primarily for the candidate's or any other person's personal use; provided, however, that no such committee may contribute to any political committee or to the campaign fund of any other candidate; and, provided further, that the director [of OCPF] shall establish reasonable rules and regulations concerning such expenditures."

pose of influencing the nomination or election of said individual or candidate . . . and shall include any . . . . (2) transfer of money or anything of value between political committees." The defendants rely essentially on the language quoted above which indicates that a transfer of "anything of value between political committees" constitutes a prohibited contribution under § 6. According to the defendants, by means of the arrangements outlined in the facts, each committee is transferring something of value to the other committee and the expenditures are, therefore, caught in the literalism of the definition of "contribution." In our view, however, the statutory analysis must go deeper because G. L. c. 55, § 1, also defines the term "[e]xpenditure" as including a transfer of "anything of value between political committees." Section 6 does not, and constitutionally could not[6] flatly prohibit an "expenditure" by a committee. Because precisely identical statutory language is used to describe two types of transfers

---

[6]In *Buckley* v. *Valeo*, 424 U.S. 1 (1976), the United States Supreme Court drew a constitutional distinction between political expenditures and political contributions, reasoning that, while expenditure limitations impose "substantial . . . restraints on the quantity and diversity of political speech," *id.* at 19, contribution limitations, by contrast, "entail[ ] only a marginal restriction upon the contributor's ability to engage in free communication" because "the transformation of contributions into political debate involves speech by someone other than the contributor." *Id.* at 20-21. Accordingly, the Court struck down on First Amendment grounds provisions of the Federal Election Campaign Act of 1971, 2 U.S.C. §§ 431-455 (1988), which placed limits on independent expenditures by individuals or groups relative to a "clearly identified candidate," while upholding the provisions which restricted the amount of contributions made to a single candidate. *Id.* at 58.

In its subsequent decisions, the United States Supreme Court consistently has relied on the expenditure/contribution distinction first articulated in *Buckley*. See, e.g., *California Medical Ass'n* v. *Federal Election Comm'n*, 453 U.S. 182 (1981) (upholding limits on contributions by unincorporated associations to multicandidate political committees); *Federal Election Comm'n* v. *Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 245 (1986) (striking down, as applied, prohibition on corporate expenditures from treasury funds "in connection with" any Federal election). See also L. Tribe, American Constitutional Law 1136 (2d ed. 1988) ("In spite of subsequent cases which have cast doubt on the utility and coherence of [the expenditure/contribution] distinction, a majority of the Court continues to subscribe to it").

which are regulated differently (one is proscribed, the other permitted), we inquire whether the defendants' method of differentiating permitted "expenditures" from prohibited "contributions" is a proper one in the factual circumstances of this case. That method, as set forth in OCPF's interpretative bulletin, is to draw this distinction based on whether a transfer from one political committee or candidate to another is made after any sort of "consultation, coordination or cooperation" between the parties. Put another way, unless the party which incurs the expenses does so wholly independently, the expense constitutes a prohibited "contribution." Because it is conceded that the committees in this case expended funds for the purchase of campaign buttons, bumper stickers and signs after consulting with one another, these expenses would constitute a prohibited "contribution" if the defendants' position is a reasonable one on the facts.[7]

The defendants' position initially has to be analyzed against the statutory language itself, see *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977), and, because a violation of G. L. c. 55, § 6, can be punished as a crime, with regard to the settled principle that criminal statutes are to be narrowly construed. See *Commonwealth* v. *Rhodes*, 389 Mass. 641, 646-647 (1983); *Commonwealth* v. *Marrone*, 387 Mass. 702, 706-707 (1982). There is no basis in the text of c. 55, § 1 or § 6, or elsewhere in the statute, to support the defendants' contention that the characterization of a transfer as a "contribution" turns on the presence or absence of prior consultation between the parties, nor does the interpretative bulletin identify any such textual basis.

---

[7]The interpretative bulletin sets forth the following example of a prohibited contribution under OCPF's reading of § 6:

"For example, candidate A's committee shares equally the printing costs of a direct mail brochure with Candidate B's committee. The brochure describes the candidacy of each of Candidate A and Candidate B using equal amounts of text and graphics. Each committee receives one half of the brochures and mails the brochures separately."

This conduct, with the sole exception of the item purchased, is identical to that undertaken by the committees.

The defendants do not tell us the source of their prior consultation argument. It appears to have been derived from the Federal Election Campaign Act of 1971 (FECA), the analogous Federal statute, and judicial interpretation thereof. That statute provides that "expenditures made by any person in cooperation, consultation, or concert with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents, shall be considered to be a contribution to such candidate." 2 U.S.C. § 441a (a)(7)(B)(i) (1982). See *Buckley* v. *Valeo*, 424 U.S. 1, 24 n.25 (1976). The OCPF definition of an improper joint expenditure virtually tracks this language.

If that indeed is the source (and we suspect it is), it must be noted that the FECA expressly provides that joint purchases of campaign buttons, bumper stickers, and signs, which are considered to be basic "grassroots" political advertising items, do not constitute contributions. See 2 U.S.C. § 431(8)(B)(xi) (1982). Furthermore, under FECA joint purchases even of general public political advertising, such as billboards and newspaper or television advertisements, are not considered contributions if the costs are allocated in a manner that reflects "the benefit reasonably expected to be derived" by each party. 11 C.F.R. § 106.1(a) (1989). The committees here, by jointly purchasing "grassroots" campaign items and allocating the cost in a reasonable manner between them,[8] have acted within the permissible limits of the Federal standards. This is not to say that the State cannot regulate political contributions in a manner that differs from the Federal approach to the same subject based upon particular conditions or requirements within the State. It is

[8]Because Weld and Cellucci are seeking high political office, and appear to share comparable recognition among voters, there is no indication that the 50/50 allocation of costs used here was unreasonable. The situation could be quite different, if, for example, one candidate enjoyed a widespread, favorable public reputation, while his or her cocandidate was a relative political unknown. In such a case, an allocation of cost in proportion to benefit received would likely require a higher percentage to be borne by the latter candidate.

to say that, in an area that is especially constitutionally sensitive (a matter we shall discuss in more detail later in this opinion), it is of significance to an evaluation of the defendants' position that the Federal statute from which the key component of OCPF's restrictive definition appears to have been borrowed specifically exempts the arrangements made here as to the purchase of campaign buttons, bumper stickers and signs.

We are also persuaded that the defendants' interpretation of what constitutes a "contribution" should not apply here because it would have the effect of prohibiting altogether joint candidacies for Governor and Lieutenant Governor in primary elections. Candidates desiring to run as a "team" for election to the offices of Governor and Lieutenant Governor could not possibly orchestrate such a joint candidacy without engaging in some type of prior consultation, coordination or cooperation. In fact, were person A to declare himself and person B joint candidates for elective office without first obtaining B's consent (which, of course, would involve prior consultation and agreement), A could have acted tortiously by appropriating B's name without authorization. See G. L. c. 214, § 3A (1988 ed.). Once such prior consultation had occurred, it would follow that A and B had transferred something of value between themselves, such as political consultation services or the sharing of office space and campaign staff. Furthermore, any efforts made to advertise this joint candidacy to the electorate — precisely the activity engaged in by the plaintiffs here — would certainly be deemed a transfer of value, and thus a prohibited "contribution."

We find nothing in the language of G. L. c. 55 which indicates that the Legislature intended to prohibit joint candidacies in primary elections for Governor and Lieutenant Governor. Were that in fact the legislative objective, we would expect to see much more specific language to that effect in view of the fact that our Constitution not only permits but *requires* that each party's candidates for Governor and Lieutenant Governor run as a "ticket" in the general election. See art. 86 of the Amendments to the Massachusetts Constitu-

tion. Thus, the interpretation of § 6 advocated by the defendants could require us to read that statute differently in the context of a primary election than in the context of a general election. While this could be done, it leads to a somewhat strained application of the law, particularly if art. 86 is considered expressive of a policy that is not antithetical to what the plaintiffs have done.

Finally, we note that a statutory ban on joint candidacies in primary elections would be of dubious constitutionality. The United States Supreme Court has observed that the First Amendment rights of speech and association have their "fullest and most urgent application precisely to the conduct of campaigns for political office," *Buckley* v. *Valeo, supra* at 15, quoting *Monitor Patriot Co.* v. *Roy*, 401 U.S. 265, 272 (1971), and that "[f]ree discussion about candidates for public office is no less critical before a primary than before a general election." *Eu* v. *San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223 (1989). "When a State seeks to restrict directly the offer of ideas by a candidate to the voters, the First Amendment surely requires that the restriction be demonstrably supported by not only a legitimate state interest, but a compelling one, and that the restriction operate without unnecessarily circumscribing protected expression." *Brown* v. *Hartlage*, 456 U.S. 45, 53-54 (1982). See *Commonwealth* v. *Dennis*, 368 Mass. 92, 99 (1975). A prohibition of joint candidacies of this type would burden both candidates' rights of free speech, see *Buckley* v. *Valeo, supra* at 19 (restrictions on political communication during a campaign "necessarily reduce[ ] the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached"), and of free association, see *Eu* v. *San Francisco County Democratic Central Comm., supra* at 224-225 ("imposing limitations 'on individuals wishing to band together to advance their views on a ballot measure, while placing none on individuals acting alone, is clearly a restraint on the right of association' "), quoting *Citizens Against Rent Control/Coalition For Fair Hous.* v. *Berkeley*, 454 U.S. 290, 296 (1981).

It is problematic that the State interest in preventing corruption or the appearance of corruption, the only interest so far held to be sufficiently compelling to justify First Amendment burdens of the type described above, see *Austin* v. *Michigan Chamber of Commerce*, 110 S. Ct. 1391, 1396-1397 (1990), would apply to the facts in this case, where the source of the equal transfers for the highest elective offices in the State is a cocandidate rather than an unrelated outside entity with potentially diverging economic interests. Cf. *Tashjian* v. *Republican Party of Conn.*, 479 U.S. 208, 224 (1986) (State may enact laws to "prevent the disruption of the political parties from without" but not laws "to prevent the parties from taking internal steps affecting their own process for the selection of candidates"); L. Tribe, American Constitutional Law 1143 (2d ed. 1988) (reasoning that expenditures from a candidate's own personal funds pose less of a corruption danger than outside contributions because a candidate "could hardly be suspected of bribing herself"). In the absence of express statutory language on point, we are reluctant to attribute to the Legislature an intent to enact a provision of doubtful constitutionality, see *Baird* v. *Attorney Gen.*, 371 Mass. 741, 745 (1977); *First Nat'l Bank* v. *Attorney Gen.*, 362 Mass. 570, 577-578 (1972); *id.* at 595, 596 (Quirico, J., concurring in the result), and we are also reluctant to give deference to an agency to construct an interpretation of a statute so as to ban activity bespeaking no appearance of corruption.

The plaintiffs have offered a more plausible basis for applying the "expenditures"/"contributions" distinction set forth in G. L. c. 55, § 6, to the present facts. Rather than focusing on the presence or absence of prior consultation, the plaintiffs draw a distinction based on the purpose for which the expense has been incurred. If the expense is incurred primarily to promote the payor's candidacy, it is an "expenditure"; if made primarily to promote the candidacy of someone other than the payor, it is a "contribution."

There is support for this distinction in the statutory language. In defining the terms "[e]xpenditure" and "[c]on-

tribution," the Legislature in § 1 of G. L. c. 55 has made reference to a purpose-based distinction. A transfer of money or anything of value "*to* an individual, candidate [or] political committee . . . for the purpose of influencing the nomination or election of said individual or candidate" (i.e., someone other than the payor) constitutes a "[c]ontribution," while an identical transfer "*by* an individual, candidate or political committee . . . for the purpose of influencing the nomination or election of said individual or candidate" (i.e., the payor) is an "[e]xpenditure." G. L. c. 55, § 1 (emphasis added).

It can be fairly said on the agreed facts that the items purchased by Weld for Governor were intended primarily for the purpose of promoting Weld's election to the office of Governor. The same can be said for the items purchased by the Cellucci Committee for his election to the office of Lieutenant Governor. While it is certainly true that both purchases were motivated at least in part by the desire to promote the payor's cocandidate, together with the joint interests of the "team," that desire is subordinate to the payor's main and overarching goal, which is to promote his own election to the particular office he seeks. See 1979 U.S. Code Congressional & Admin. News 2869 (legislative history of FECA) (noting that, "[i]f a candidate makes an expenditure from his or her campaign account, the possibility that it is not for the purpose of furthering his or her election is remote at best").

Accordingly, we conclude that the expenses incurred by Weld for Governor and the Cellucci Committee for the joint purchase of campaign buttons, bumper stickers, and signs bearing both candidates' names do not constitute prohibited "contributions" within the ban of G. L. c. 55, § 6. The statute will bear an interpretation that says that shared expenses, evenly apportioned, are not forbidden contributions when applied to facts indicating that (1) the parties have publicly declared themselves to be cocandidates for elected office and are running as a bona fide "team"; (2) the nature of the offices sought by these candidates, Governor and Lieu-

tenant Governor, is such that close cooperation between the office-holders is required on a daily basis; (3) the items jointly purchased do not include general public political advertising, such as billboards and newspaper or television advertisements, but are confined to buttons, bumper stickers, and signs; (4) the candidates have carefully allocated the costs between themselves in a manner which reflects the relative benefit reasonably expected to be derived by each candidate; and (5) there is no suggestion of dishonesty.[9] If problems are posed by the general prospect of joint campaigns in other situations, then the Legislature may wish to consider suitable revision of the statute, or the director, consistent with his power to implement the statute's directives, may wish to frame rules and regulations more carefully tailored to avert anticipated harms.

A declaration is to enter in the county court that, on the facts presented, G. L. c. 55, § 6, does not prohibit the expenditures that Weld for Governor and the Cellucci Committee have made, and wish to continue to make, for the purchase of campaign buttons, bumper stickers, and signs bearing the names of Weld and Cellucci.

*So ordered.*

---

[9]The dissent's objection that we cannot explain "what provisions in c. 55 provide a basis for distinction between joint expenditures for campaign buttons, bumper stickers, and signs, on the one hand, and joint expenditures for newspaper, billboard, and television advertising on the other," *post* at 776, is not relevant, because our decision draws no such distinction. The fact that our decision speaks only to the joint purchase of buttons, bumper stickers, and signs, is due solely to the fact that the plaintiffs' declaratory judgment request asks nothing more. Accordingly, we have narrowly crafted our decision to cover only the precise fact pattern currently before us, and express no opinion as to how we might view a case presenting different facts.

O'CONNOR, J. (dissenting). General Laws c. 55, § 6 (1988 ed.), provides in relevant part that "[a] political committee organized or operating on behalf of a candidate for the office of governor, lieutenant governor, attorney general, state secretary, treasurer and receiver general, or auditor" may receive and expend money or other things of value for certain purposes "provided, however, that no such committee may contribute to any other political committee or to the campaign fund of any other candidate." Chapter 55, § 1, defines the term "[c]ontribution" as "a contribution of money or anything of value to an individual, candidate, political committee, or person acting on behalf of said individual, candidate or political committee, for the purpose of influencing the nomination or election of said individual or candidate . . . and shall include any . . . transfer of money or anything of value between political committees." Here, each candidate and political committee wants to buy buttons, stickers, and signs in part to promote the other's candidacy. The plan is that the cost of the campaign items will be split evenly between the two candidates (including their committees). Thus, each candidate would expend money to provide to the other candidate the benefit of advertising and promoting the other's candidacy. Such conduct would be a clear violation of the unambiguous statutory prohibition. Furthermore, nothing in the statute suggests that it would make a difference that the joint purchase would be designed to promote the payor's, as well as the other candidate's, candidacy or that the plan calls for reciprocal beneficial contributions.

The court appears to endorse the plaintiffs' assertion that, "[i]f the expense is incurred primarily to promote the payor's candidacy, it is an 'expenditure'; if made primarily to promote the candidacy of someone other than the payor, it is a 'contribution.'" That assertion has no support in the statutory language. Chapter 55, § 1, defines the term "contribution" as a contribution made for the purpose of influencing the nomination or election of another candidate, not as one made "primarily" for that purpose. Chapter 55, § 6, does expressly proscribe an "expenditure that is . . . primarily for

the candidate's or any other person's personal use," but the word "primarily" does not appear in connection with the definition of the term "contribution" in § 1 nor in connection with the mandate in § 6 "that no such committee may contribute to any other political committee or to the campaign fund of any other candidate." By implying the word "primarily" where it does not appear, the court "violates the rule that where the Legislature has employed specific language in one paragraph [or sentence], but not in another [in the same statute], the language should not be implied where it is not present." *Commonwealth* v. *Galvin*, 388 Mass. 326, 330 (1983), quoting *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982).

The court asserts that G. L. c. 55, § 1, which is a criminal statute and therefore must be strictly construed against the government, defines both the word "[c]ontribution" and the word "[e]xpenditure" precisely the same way, that is, as a transfer of anything of value between two political committees. *Ante* at 764. Proceeding from that proposition, the court reasons that nothing in the statute gives guidance as to whether a purchase of campaign items by one candidate or his committee to advance the candidacy of another candidate is an allowed expenditure or a disallowed contribution. Therefore, the court concludes, the plaintiffs' proposed conduct cannot properly be viewed as violating the statute. The court is mistaken. The statutory definitions of "contribution" and "expenditure" are not precisely the same. They are significantly different. A contribution under G. L. c. 55, § 1, is a transfer of anything of value between two political committees for the purpose of influencing the nomination or election of the *transferee*. An expenditure under the same statute is a transfer made for the purpose of influencing the nomination or election of the *transferor*. The statute clearly allows expenditures. However, it just as clearly prohibits a candidate or his or her committee from contributing to the campaign of another candidate, which is the conduct at issue here.

By interpreting the statute as permitting joint expenditures for buttons, bumper stickers, and signs advertising both can-

didates, the court avoids addressing the question whether G. L. c. 55, § 6, as applied to the plaintiffs, is constitutional, a question to which I shall return. Nevertheless, the court engages in considerable discussion concerning the constitutionality of the statute. The court concludes, *ante* at 770, that it is "reluctant to attribute to the Legislature an intent to enact a provision of doubtful constitutionality." Consideration of the doubtful constitutionality of a statute in connection with its interpretation is indeed appropriate when the statute reasonably is susceptible of both constitutional and unconstitutional constructions. *First Nat'l Bank* v. *Attorney Gen.*, 362 Mass. 570, 578 (1972). *Id.* at 595-596 (Quirico, J., concurring in the result). The statute in question, however, is not reasonably susceptible of two constructions. The statute can only reasonably be construed as prohibiting the contributions contemplated by the plaintiffs. If constitutional, the statute must be enforced. If it is unconstitutional, it must be struck down. The court exceeds its lawful power when it rewrites the statute even if it is motivated to do so by a desire to save it from constitutional infirmity (an infirmity which, in my judgment, does not exist).

Not only should the court avoid tampering with "the literalism of the definition of 'contribution' " in the statute, *ante* at 765, in order to save it from constitutional infirmity, but also the court should refrain from departing from the plain language of the statute in order to make it more like the Federal Election Campaign Act, 2 U.S.C. §§ 431-456 (1988), a statute which, perhaps, the court prefers. The Federal statute's express exemption of joint purchases of campaign buttons, stickers, and signs is notably absent from G. L. c. 55. The court ultimately concludes that "shared expenses, evenly apportioned, are not forbidden contributions when applied to facts indicating [among other things] that . . . the items jointly purchased do not include general public political advertising, such as billboards and newspaper or television advertisement, but are confined to buttons, bumper stickers, and signs; [and that] the candidates have carefully allocated the costs between themselves in a manner which

reflects the relative benefit reasonably expected to be derived by each candidate." *Ante* at 771-772. Thus, ostensibly as a matter of statutory construction, the court imports wholesale into G. L. c. 55 provisions not expressed in c. 55 but only contained in the Federal Election Campaign Act. One might reasonably ask what provisions in c. 55 provide a basis for distinction between joint expenditures for campaign buttons, bumper stickers, and signs, on the one hand, and joint expenditures for newspaper, billboard, and television advertising on the other.

Neither is the court justified in failing to give effect to the statute's "literal" definition of "contribution" by the fact that to do so "would have the effect of prohibiting altogether joint candidacies for Governor and Lieutenant Governor in primary elections." *Ante* at 768. Whether that is true is questionable but need not be debated. The Legislature, not the court, is charged with enacting the law, and may, if it chooses to, enact a statute that discourages joint candidacies for Governor and Lieutenant Governor in primary elections.

Article 86 of the Amendments to the Massachusetts Constitution provides that, after the candidates for Governor and Lieutenant Governor have been nominated, the nominees of each party shall be placed together on the ballot and, if voted for, must be voted for as a team. The court appears to reason that, since a party's candidates for those offices must be voted for as a team in the general election, they must be permitted to make joint expenditures in the general election campaign, and therefore the Legislature cannot reasonably be thought to have intended to proscribe such expenditures in primary campaigns. Once again, the statutory language unambiguously forbids joint expenditures. Perhaps, some day, in another case, the court will be required to consider the constitutionality and application of the statute in a case involving a general election but, for the purposes of this case, which involves a primary only, the statute is clear and, in my view, constitutional as applied.

I turn now to a discussion of the constitutionality of G. L. c. 55, § 6, as I would interpret it. I do so only because my

conclusion that the statute lawfully and effectively prohibits the joint expenditures at issue depends on the statute's being constitutional. Of course, it is true that limitations on political expenditures and contributions implicate First Amendment values. It is also true, as the court observes, *ante* at 770, that "preventing corruption or the appearance of corruption [is] the only interest so far held to be sufficiently compelling to justify First Amendment burdens" on political expression and association. *Buckley* v. *Valeo*, 424 U.S. 1 (1976), teaches that the amount of money or other thing of value an individual may expend in support of a candidacy may not be constitutionally restricted if the expenditure is totally independent of the candidate, that is, neither prearranged nor solicited by the candidate or on the candidate's behalf, *id.* at 44-48, but expenditures that are requested or coordinated or prearranged may be treated as contributions, as the Federal Election Campaign Act treats them, *id* at 46-47 n.53, and constitutionally may be restricted. *Id.* at 26-38. Contributions may be restricted consistent with the First Amendment because of the compelling governmental interest in limiting contributions so as to avoid either the actuality or the appearance of corruption flowing from the potential for quid pro quo arrangements between candidates and their benefactors. *Id.* The same potential for corruption or the appearance of corruption that accompanies contributions to candidates by noncandidates is present when contributions are made by candidates to other candidates. The First Amendment is not violated by a statute prohibiting such conduct.

General Laws c. 55, § 1, defines a "[c]ontribution" as a transfer of anything of value between two political committees for the purpose of influencing the nomination or election of the transferee. Neither § 1 nor § 6 distinguishes transfers made after solicitation, consultation, or by prearrangement from totally unsolicited and uncoordinated independent transfers. On its face then, the statute may literally be read as prohibiting a candidate or his or her political committee from making a completely independent expenditure for the

purpose of promoting another candidate's candidacy. To that limited extent, the statute is overbroad. However, the minimal overbreadth of the statute does not require that it be struck down. The likelihood of candidates or their committees expending funds for the political advantage of other candidates, without solicitation, coordination, or prearrangement is miniscule. Furthermore, the likelihood of prosecution for such conduct is virtually nonexistent in view of the interpretative bulletin issued by the agency charged with the statute's enforcement, the office of campaign and political finance (OCPF), defining a prohibited joint expenditure as "any expenditure that is made in cooperation or consultation with any candidate, or a nonelected political committee organized on behalf of a candidate, or any agent of a candidate, or made in concert with, or at the request or suggestion of, any candidate, or any nonelected political committee organized on behalf of a candidate or agent of such candidate." The overbreadth doctrine is designed only to prevent actual and substantial chilling of protected speech. *Massachusetts* v. *Oakes*, 109 S. Ct. 2633, 2638 (1989). No such chilling is threatened by G. L. c. 55, §§ 1, 6.

I would order the entry of a declaration that G. L. c. 55, § 6, prohibits the expenditures that are at issue in this case.